## LIPPRANT *v.* LIPPRANT.

SLANDER. — *Words.* — *Provincial Meaning.* — Words not slanderous *per se* spoken concerning a woman, which at the time and place have, when spoken of a woman, a provincial meaning imputing to her the keeping of a whore-house, and which are spoken in such provincial sense and are so understood by the persons to whom they are spoken, are actionable.

SAME.—*Evidence.*—On the trial of an action for slander, there was no error in refusing to permit the defendant to prove that, about the time of the commencement of said action, the plaintiff said she intended to bring suits against the defendant and prosecute the same until she broke him up.

EVIDENCE.—*Instruction Concerning.*—The failure of a court to instruct the jury as to the proper purpose for which evidence introduced has been admitted cannot render erroneous the admission of the evidence.

From the Newton Circuit Court.

*R. S. Dwiggins* and *Z. Dwiggins,* for appellant.

*E. L. Urmston, J. Healey, W. H. Martin* and *B. K. Elliott,* for appellee.

DOWNEY, J.—This was an action by the appellee against the appellant for slander, and there was judgment for the plaintiff. The complaint was in five paragraphs, a demurrer to the second and fifth of which was filed and overruled. The answer was in two paragraphs, the first of which was a general denial. The second was special, and to it a demurrer was sustained.

The trial was by jury. There was a verdict for the plaintiff; motions by the defendant for a new trial and in arrest of judgment were overruled, and there was final judgment for the plaintiff.

Several motions were made by the defendant to strike out sets of words in the complaint, one of which was sustained, and the others were overruled. This action of the court is assigned as error, but we do not think it involves the merits of the complaint.

The rulings of the court on the demurrers to the second and fifth paragraphs of the complaint are also assigned as errors. Looking to the evidence in the record, we think it

VOL. LII.—18

clear that the case did not turn on the second paragraph of the complaint.

In the fifth paragraph, it is alleged that the defendant spoke of and concerning the plaintiff these words: "She" (meaning the plaintiff) "is living at Watters'" (meaning a citizen of said county) "and is keeping an accommodation-house." "She" (meaning the plaintiff) "is keeping an accommodation-house." It is averred that the words used, when spoken of a woman, had, at that time and place, a provincial meaning, that is, the keeping of a whore-house; that the defendant spoke the words in such provincial sense, and that they were so understood by the persons to whom they were spoken.

It seems to us that this paragraph of the complaint is sufficient. To charge a person with keeping a whore-house is actionable. Townshend Slander, 237. That is what the words import, according to their provincial meaning. This is on the ground that such a house is a common nuisance. Wright v. Paige, 36 Barb. 438; 2 G. & H. 288, sec. 628; 2 G. & H. 460, sec. 8.

Counsel urge that the paragraph is bad for want of prefatory allegations showing that the words were used in a slanderous sense, and we are referred to Ward v. Colyhan, 30 Ind. 395. We recognize the authority of that case, but it is not applicable here. In that case, there were no averments of prefatory matter showing the sense in which the words were used. Here there are such averments. We recognize the difference between mere innuendoes and averments essential to render words actionable which are not actionable per se. See Shigley v. Snyder, 45 Ind. 541, and cases there cited.

It is claimed that the court erred in sustaining the demurrer to the second paragraph of the answer. This paragraph is advocated on the ground that it was good in mitigation of damages. The words to which the paragraph relates were not proved, and hence this question is immaterial.

We will next consider the question as to the sufficiency of

the evidence, a question made in the motion for a new trial, the overruling of which is assigned as error.

The action was commenced on the 5th day of September, 1873, by the filing of a complaint and the issuing of a summons thereon against the defendant. The action was commenced in Jasper county, and was numbered 589. On the 17th day of September, 1873, a demurrer to the complaint was sustained, and leave was granted to file an amended complaint. On the 24th day of September, 1873, an amended complaint was filed. On the 26th day of September, 1873, leave was asked by the plaintiff to file a supplemental complaint, which was denied. On the 8th day of November, 1873, in vacation, the plaintiff filed another complaint, numbered 604, on which the clerk issued another summons. On the 3d day of December, 1873, the court ordered that the two actions, by their numbers, be consolidated, and that the plaintiff file an amended complaint, embracing the causes of action in both complaints; and on the 4th day of December, 1873, the amended complaint was filed.

It might, probably, have been made a question whether these entries show the existence, at any time, of two actions. But counsel make no such question, and we need not do so. The question as to when the action was commenced becomes material, on account of the date at which the words were spoken. There is nothing in the record to show what was contained in the complaint, or amended complaint, numbered 589, or in the complaint numbered 604. Proof of the speaking of words after an action has been commenced, whatever other uses may be made of them, cannot sustain the action.

A witness testified that, about the 15th day of September, 1873, the defendant said to him, when inquired of as to what the plaintiff was doing, that " she was living in a house on the Remington road, near the end of a certain willow hedge, and he guessed she was keeping an accommodation-house." The date given here was after the commencement of the first

action, conceding that there were two actions, but before the commencement of the second. It is probable that these words were not in the complaint numbered 589, and that this was the reason why it was sought to file a supplemental complaint, and why the complaint numbered 604 was filed. We may assume, in support of the judgment, that this was so, and in this way, so far as this part is concerned, and as error must be shown by the appellant, and cannot be presumed, sustain the action of the circuit court. ·

Counsel contend that it is not shown by the evidence that the words used have the provincial meaning alleged in the complaint. Several witnesses testify on the subject, some one way and some the other. John M. Austin, to whom the words were spoken, testified, in the first place, that the words, when applied to a woman, had no local meaning in the town of Rensselaer or vicinity; that they meant the same there as anywhere else; that he kept an accommodation-house himself, being a hotel keeper. Subsequently, being recalled, he testified that "the phrase 'is keeping an accommodation-house,' when applied to a woman, in Jasper county, in his opinion, mean the same as a house of ill-fame, or house of prostitution." On cross-examination, he said, "the phrase 'is keeping an accommodation-house,' when applied to a woman, means the same in Jasper county as it would in Newton county, or anywhere else. I do not think it means anything different in Jasper county than it does anywhere else. I am only giving my personal opinion about it."

It is averred in the complaint, that the party to whom the words were spoken understood them in their alleged provincial sense or meaning. It does not appear that any other person than the witness, Austin, was present, or heard the words spoken. Does this evidence sustain the complaint? We think it does.

The court admitted evidence of the speaking of words not in the complaint, after the commencement of the action, to show malice in the speaking of the words alleged in the com-

plaint to have been spoken.   Counsel for the appellant concede that this was correct, but urge that the court did not properly instruct the jury as to the purpose for which the evidence was admitted.   The act of the court in admitting the evidence is one thing, and any instruction necessary to guide the jury in its consideration is quite another.   The court committed no error in admitting the evidence, and gave no erroneous instruction with reference to it.   If it was supposed by the defendant that any additional instructions were necessary to enable the jury to properly consider and apply the evidence, such further instructions should have been asked by him, and, if they were not given, a question upon the ruling might have been reserved.   We see no error in this action of the court.

The defendant offered to prove that the plaintiff said, about the time of the commencement of this suit, that she intended to bring suits against said defendant and prosecute the same until she broke him up; which evidence the court refused to admit.

We do not see that there was any error in this ruling. The offered evidence did not tend to show that the words were or were not spoken by the defendant; nor did it tend to affect in any way the amount of the damages.

In *Patterson* v. *Hutchinson,* 30 Ind. 38, which was an action for slander, the venue had been changed, and the plaintiff was allowed, over the objection of the defendant, to prove that he wanted to change the venue because he wanted the plaintiff to have some trouble, " as well as him all." It was held by this court that it was error to admit the evidence, as nothing that was said could have the effect to increase the damages, or to show with what mind the words charged were spoken.

The judgment is affirmed, with costs.