MODERN WOODMEN OF AMERICA v. EDNA P. TAYLOR.

No. 12,954.   (71 Pac. 807.)

SYLLABUS BY THE COURT.

FRATERNAL INSURANCE—*Suspension of Member—Method of Redress*. A member of a fraternal insurance association who is denied rights and benefits to which he claims to be entitled under its by-laws must avail himself of the right of appeal provided by the laws of the order for the redress of such grievances before he can resort to the courts. A failure to seek such method of review by the holder of a benefit certificate, whose tender of monthly dues was refused by the secretary and who thereby became suspended from the order, will defeat an action brought against the association on such benefit certificate after the death of the holder.

Error from Jackson district court; MARSHALL GEP-HART, judge.   Opinion filed March 7, 1903.   Reheard October 5, 1903.   Reversed.

C. F. Hurrel, and J. G. Johnson, for plaintiff in error.
John D. Myers, for defendant in error.

The opinion of the court was delivered by

SMITH, J. :  Dr. T. E. Taylor was a member of Circleville camp of the Modern Woodmen of America. He held a benefit certificate in the order for the sum of $2000, payable to his father, which was assigned to defendant in error, wife of the deceased, after his death.   Taylor died on March 8, 1900.

In October, 1899, Taylor tendered to the clerk of Circleville camp the amount of the assessment payable on or before November 1, necessary to keep in force his benefit certificate, but the tender was rejected on the ground that the insured was intemperate and addicted to the use of cocaine or opiates.

In his written application for membership, and for indemnity in case of death to the amount of $2000, Doctor Taylor stated :

"I agree to make punctual payment of all dues and assessments for which I may become liable, and to conform in all respects to the laws, rules and usages of the order now in force, or which may hereafter be adopted by the same."

The application also contained the following :

"If I shall fail to comply with and conform to any and all of the laws of said Modern Woodmen of America, whether now in force or hereafter adopted, that my benefit certificate shall be void."

In the benefit certificate issued to Doctor Taylor in September, 1895, is found the following provision :

"This certificate is issued in consideration of the warranties and agreements made by the person named in this certificate in his application to become a member of this fraternity," etc.

Another clause in the certificate is to the effect that, if the member shall become so far intemperate in the use of alcoholic drinks or the use of opiates as permanently to impair his health, or to produce *delirium tremens*, the certificate shall be null and void.

The following by-laws of the order were in effect during the time of Doctor Taylor's membership :

"Sec. 276. *Shall not receive dues or assessments from intemperate members.*—He (the camp clerk) shall not receive or collect dues or assessments from a member whom' he knows to be addicted to the intemperate use of intoxicants or opiates to such an extent as to be frequently under the influence thereof or intoxicated, or use drugs to such an extent as to injure his health."

"Sec. 279. *Appeal from the ruling of clerk.*—Any member of the society aggrieved by the ruling of the clerk in refusing or accepting dues or assessments under any of the provisions of the preceding sections of this chapter may appeal from his decision to the camp within thirty days from the date of the refusal or acceptance of dues or assessments by said clerk by serving notice of said appeal on the consul. The local camp shall thereupon proceed to try the question in the same manner and under the same rules as are prescribed in these by-laws for other camp trials."

"Sec. 329. *Appeals from decision of clerk of camp.*—Any member of this society aggrieved by the decision of the clerk of the local camp upon any ruling made in accepting or refusing dues or assessments under the provisions of chapter 43 hereof may appeal to his local camp from such decision. Said appeal shall be perfected by filing with the consul notice of the taking of such appeal within thirty days from the ruling of

the clerk.   Such appeal shall be heard and deter-
mined in the same manner as a trial in the local
camp.''

By another section of the by-laws an appeal is pro-
vided for from the local camp in any such trial to the
executive council, which is composed of the seven
highest officers in the order, and an appeal is also al-
lowed from the executive council to the head camp,
the highest legislative body.   Section 332 of the by-
laws reads :

''All rulings of the clerk of the local camp, as re-
ferred to in section 329, and all decisions of local
camps and of the head consul, as provided in sections
330 and 331, shall be final and conclusive unless ap-
peals therefrom are perfected in the manner and within
the time prescribed by these laws.''

Section 47 of the by-laws provides :

''SEC. 47. *What suspended members may do.*—A sus-
pended member is not entitled to any of the benefits
of this society, either fraternal or beneficial.   .   .   .''

As before stated, the clerk of the camp to which
Doctor Taylor belonged refused, in October, to receive
the assessment required by the by-laws to be paid by
November 1.   There is no allegation in the petition,
nor was there any showing made, that Taylor appealed
from the ruling of the clerk.   The court below in-
structed the jury that the appeal authorized by the
by-laws was permissive only, and did not obligate
Taylor to resort thereto.   From a verdict and judg-
ment for the amount of the benefit certificate, plain-
tiff in error has brought the case here for review.

In *Reno Lodge v. Grand Lodge,* 54 Kan. 73, 37 Pac.
1003, 26 L. R. A. 98, the grand lodge of Odd Fellows,
to which Reno lodge was subordinate, levied an as-
sessment of one dollar on each member of the order

in Kansas for the purpose of paying an indebtedness on property held in trust for the order, conveyed by one De Boissiere, and fifty cents additional *per capita* to maintain the same as an orphans' home. Reno lodge and ninety-one other lodges in the state refused to pay the assessment, and brought suit against the grand lodge to enjoin it from collecting the same. It was contended by the plaintiffs in that action that the grand lodge had no power to levy the tax; that the real estate conveyed by De Boissiere to trustees was not subject to the control of the grand lodge, and that it had no title thereto. There was provision made in the constitution and by-laws of the Odd Fellows' order for an appeal from the decision of the state grand lodge to the sovereign grand lodge of the United States concerning all matters relating to the purposes of the order. No appeal was taken. It was held that the suit could not be maintained. The court said:

"The mode in which the orders of the grand lodge of the state are threatened with enforcement is by severing connection with and by the expulsion of the subordinate lodges which refuse to pay the assessments.. There are many authorities which hold that, where a mode is pointed out for redressing grievances in an association of this kind by a charter or by-laws, members of the organization are bound to pursue that remedy before resorting to the courts, and that where a right of appeal is given to a tribunal provided by the society, the members must pursue that remedy. (Nibl. Mut. Ben. Soc. §§ 79, 130; Bac. Ben. Soc. § 94; *Harrington v. Benevolent Association*, 70 Ga. 340; *Chamberlain v. Lincoln*, 129 Mass. 70; *Lafond v. Deems*, 81 N. Y. 507; *Osceola Tribe v. Schmidt*, 57 Md. 98; *Oliver v. Hopkins*, 10 N. E. 776.)"

In *Supreme Lodge Knights of Pythias of the World v.*

*Wilson,* 66 Fed. 785, 787, 14 C. C. A. 264, 266, the court said :

"The right of the defendant in error (the plaintiff below) to recover must rest upon the ground that her husband was at the time of his death a member in good standing of the endowment rank of the order of Knights of Pythias, the defendant below.   Before his death he had been suspended from his lodge, and from the time of such suspension his membership in the en- dowment rank ceased.   The defendant in error claims that the proceedings against her husband were irreg- ular and illegal, and did not conform to the laws and regulations of the order.   Under the laws and rules of the society, to which he voluntarily subscribed, he had an appeal to the grand lodge, to which he could have resorted.   He failed to take any appeal from the de- cision of suspension, and must be held to have ac- quiesced in it."

Again, in *Jeane v. Grand Lodge A. O. U. W.,* 86 Me. 434, 436, 30 Atl. 70, 71, the court said :

"The plaintiff must recover, if at all, upon the ground that her husband died while a member of the defendant corporation in good standing.   Before his death he had been expelled from membership.   It is said that the proceedings leading to his expulsion were irregular, and did not conform to the rules of the order.   Suppose they were ; the laws of the order give an appeal to a supreme tribunal constituted for the very purpose of correcting such errors, and they pro- vide that each member failing to take such appeal 'shall be deemed to have thereby agreed to abide by such decision or enforcement of the laws or rules of the order.'"

To the same effect see *The Supreme Sitting Order of the Iron Hall v. Stein,* 120 Ind. 270, 22 N. E. 36 ; *Can- field v. Knights of Maccabees,* 87 Mich. 626, 49 N. W. 875, 13 L. R. A. 625, 24 Am. St. Rep. 186 ; *Loeffler v. Modern Woodmen of America,* 100 Wis. 79, 75 N. W.

1012; *Robinson v. Templar Lodge, I. O. O. F.*, 117 Cal. 370, 59 Am. St. Rep. 193, and note at pp. 203, 204.

The rights of members in beneficial societies like the Modern Woodmen rest in contract. The point made by counsel for defendant in error is that the refusal of the clerk to receive or collect dues from a member for the reason that he is addicted to the use of intoxicating liquors or opiates is oppressive and unreasonable, and therefore void. If there were no provision in the by-laws for a review of the action of the camp clerk in refusing to receive assessments from a member, we might agree with the contention made. (*Supreme Lodge v. Raymond*, 57 Kan. 647, 47 Pac. 533, 49 L. R. A. 373.) The provision allowing an appeal is a protection to a member whose rights have been denied by an arbitrary act of the clerk. There being within the order itself a procedure laid down for the correction of unjust and improper rulings of that officer, the authorities are almost unanimous to the effect that the courts will not interfere until the remedies provided within the order have been exhausted. The court below instructed the jury that the right of appeal was a mere privilege granted to the insured. In this we cannot concur. By section 332 of the by-laws above set out, it is provided that the rulings of the clerk shall be final and conclusive unless appeals be taken therefrom. In *The Supreme Council of the Order of Chosen Friends v. Forsinger*, 125 Ind. 52, 25 N. E. 129, 9 L. R. A. 501, 21 Am. St. Rep. 196, this question was considered, and decided against the view taken by the trial court. It was there held that the right to appeal was not a mere privilege but a duty imposed. It was also decided that, until the claimant had done what his contract required, or shown some valid excuse for not doing so, he could have no

Modern Woodmen v. Taylor.

standing in court. The case referred to is pertinent and instructive.

We do not think that the requiring of proofs of loss after the death of Taylor constituted a waiver by the order of any of its rights under the certificate or by-laws.

The judgment of the court below will be reversed, with directions to proceed further in accordance with this opinion.

JOHNSTON, C. J., CUNNINGHAM, GREENE, MASON, JJ., concurring.

SMITH, J. (dissenting) : The benefit certificate issued to Doctor Taylor contained a provision that the same should become null and void if the holder became so far intemperate in the use of alcoholic drinks or opiates as permanently to impair his health or to produce *delirium tremens.* Section 276 of the by-laws reads :

"SEC. 276. *Shall not receive dues or assessments from intemperate members.*— He (the camp clerk) shall not receive or collect dues or assessments from a member whom he knows to be addicted to the intemperate use of intoxicants or opiates to such extent as to be frequently under the influence thereof or intoxicated, or use drugs to such an extent as to injure his health."

The refusal of the clerk of Circleville camp to receive the member's assessment, payable on or before November 1, 1899, was for the reason that the holder "had been using opiates—morphine." "I told him that . . . he had been using morphine," the clerk testified, and, in answer to a question why he did not accept the assessment, he testified further that he understood that a holder of a certificate dare not use opiates or anything of that kind ; that he refused the assessment on the ground that he was in-

temperate and used cocaine or opiates, and, therefore, according to the by-laws, it could not be received. There was no claim that the insured was intemperate by the use of intoxicants to such an extent as to be "frequently under the influence thereof."

It will be noted that the intemperance of a member or his use of alcoholic drinks or opiates does not, by the conditions of the benefit certificate, render it null and void unless such intemperance or use of opiates *permanently* impairs his health. In the by-laws it is provided that, before a tender of dues or assessments can be rejected by the clerk, he must know that the member is addicted to "the intemperate use of intoxicants or opiates to such an extent as to be frequently under the influence thereof or intoxicated, or use drugs to such an extent as to injure his health." The refusal of both the clerk and his assistant to receive the assessment was not based upon reasons found in the language of either the certificate or the by-laws, authorizing a refusal of the tender. For this reason the refusal was not justified. The clerk had as much authority to reject an offered assessment on the ground that the member had been guilty of larceny. Forfeitures are not favored in the law, and courts lean against them. A valid refusal to receive assessments which the member has agreed to pay must find its justification in the terms of the certificate or in the by-laws. In other words, the member must have violated his contract with the association. By section 281 of the by-laws, it is provided that if the clerk shall knowingly violate section 276, which relates to the receipt of assessments from a member whom he knows to be addicted to the intemperate use of intoxicants or opiates to such an extent as to be frequently under the influence thereof or intoxicated, or to use drugs to such an extent as to injure his health, upon

conviction thereof he shall be expelled from the association.

If the clerk had received dues from Taylor, he certainly could not be expelled from the association, with no more proof against him on its part than the reasons given by him for a refusal to receive the assessment tendered.   There was no jurisdiction in the clerk to suspend a member under the reasons which he gave therefor.   Therefore, it was not incumbent upon the member to appeal.   (Nibl. Ben. Soc. and Acc. Ins., 2d ed., 101.)   In Bacon on Benefit Societies, section 107, it is said:

"And the duty of an expelled member to exhaust, by appeals or otherwise, all the remedies within the organization arises only where the association is acting strictly within the scope of its powers."

A case in point by analogy is that of *Gille v. Emmons*, 58 Kan. 118, 48 Pac. 569, 62 Am. St. Rep. 609, in which it was held that a judgment entirely outside the issues in a case, and upon a matter not submitted to the court for its determination, is a nullity.   The point decided was that the judgment of the court upon a subject of litigation within its jurisdiction, but not brought before it by any statement or claim of the parties, is null and void.

In the matter of the refusal of this assessment, the clerk no doubt had jurisdiction, if his findings, which indicate the matter considered by him, had covered the grounds laid down in the by-laws which authorized the rejection of dues.   His reasons, however, were outside, and independent of, those which, under the contract, permitted the clerk to declare a forfeiture. (*Glardon v. Supreme Lodge Knights of Pythias*, 50 Mo. App. 45.)

POLLOCK, BURCH, JJ.:  We concur in the foregoing dissent.