No. 20,034.

THE STATE OF KANSAS, *Appellee*, v. A. G. HUFF, *Appellant*.

SYLLABUS BY THE COURT.

1. LIBEL—*Charging Failure to List Property for Taxation—Publication Not Libelous on Its Face.* An assessor claimed that a candidate for office had not listed his property for taxation, and an investigation of the matter was had before the board of county commissioners, which decided that he had listed all personal property of his own and that certain money in his possession belonged to his brother, who was a nonresident, and that it was not subject to taxation. Concerning the inquiry and decision the defendant wrote the following:

"THE STUART INVESTIGATION.

"The investigation of Wm. I. Stuart before the County Commissioners, Tuesday, showed that on March 1st, 1913, he had on deposit in The Citizens State Bank, of Hiawatha, $19,180.00. He produced checks enough to offset this amount all but $1,239.00, which he had on deposit and failed to show checks for, and in addition to this he had drawn a check on March 1, 1913, for $4,000.00 made payable to himself and which he presented for payment on March 6, 1913. This left a balance on hand or on deposit of $5,239.00 on March 1, 1913, which he claimed belonged to his brother, J. W. Stuart, a nonresident of Brown county. But this money was in Brown county on March 1, 1913, and should have been taxed, but the Commissioners failed to find against him. It is said the matter will be reviewed by the State Tax Commission and left for them to decide."

*Held*, that the article is not libelous on its face.

2. SAME—*Natural Meaning of Words—Not Changed or Enlarged by Innuendo.* An innuendo is used to explain the meaning of words employed by the defendant, but not to change or enlarge their natural meaning, and whether a publication is libelous *per se* or the language thereof will bear the interpretation or convey the meaning ascribed to it in the innuendo are questions of law for the court.

3. SAME—*Innuendo—Not Warranted.* The innuendo herein used has been examined, and it is held that it places an interpretation upon the language of the publication which it will not bear.

Appeal from Brown district court; JAMES H. WENDORFF, judge *pro tem.* Opinion filed November 6, 1915. Reversed.

*Sample F. Newlon,* of Hiawatha, *Walter E. Brown,* and *A. E. Crane,* both of Atchison, for the appellant.

*S. M. Brewster,* attorney-general, *S. N. Hawkes,* assistant attorney-general, and *W. E. Archer,* county attorney, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In an information filed in the district court of Brown county on September 8, 1914, A. G. Huff was charged with having willfully, unlawfully and maliciously published, on September 3, 1914, a libel concerning William I. Stuart. Huff was the owner, editor and publisher of *The Hamlin Reporter,* a weekly newspaper published at Hamlin and of general circulation in Brown county. William I. Stuart was the judge of the twenty-second judicial district, which includes Brown county. In the election of 1914 Judge Stuart was a candidate for reëlection to succeed himself, and opposing him was another candidate, whom Huff supported. It appears that a deputy assessor complained that Judge Stuart had failed to list all his personal property for taxation, and an inquest was had before the board of county commissioners on September 1, 1914, who found that Judge Stuart had made a proper return of it. Concerning the inquest Huff wrote and published the following article, which is the publication of which complaint is made:

"THE STUART INVESTIGATION.

"The investigation of Wm. I. Stuart before the County Commissioners, Tuesday, showed that on March 1st, 1913, he had on deposit in The Citizens State Bank, of Hiawatha, $19,180.00. He produced checks enough to offset this amount all but $1,239.00, which he had on deposit and failed to show checks for, and in addition to this he had drawn a check on March 1, 1913, for $4,000.00 made payable to himself and which he presented for payment on March 6, 1913. This left a balance on hand or on deposit of $5,239.00 on March 1, 1913, which he claimed belonged to his brother, J. W. Stuart, a nonresident of Brown county. But this money was in Brown county on March 1, 1913, and should have been taxed, but the Commissioners failed to find against him. It is said the matter will be reviewed by the State Tax Commission and left for them to decide."

A motion to quash the information was overruled, and at the close of the plaintiff's evidence defendant moved that the jury be instructed to return a verdict of not guilty, but this motion was overruled. The jury found Huff guilty, and, his motion in arrest of judgment being overruled, he was sentenced to pay a fine of $25 and costs. From this judgment Huff appeals.

Does the information state a public offense? is the controlling question presented for determination. The publication purports to be a report of an investigation had before the board of county commissioners as to the listing of property for taxation. In effect it recites that prior to March 1, 1913, Judge Stuart had checked and paid out all of the money which he had deposited in a bank except the sum of $1239. It is further stated that on March 1 he had drawn a check payable to himself for $4000 which was not presented until March 6. There is no suggestion that any part of the deposit was subject to taxation except the two items mentioned which amount to $5239, and as to this amount it is said that Judge Stuart claimed that it belonged to his brother who is a nonresident. There is no imputation that Judge Stuart did not make a complete return of all of his own property, but it is stated that this amount which belonged to his brother was in Brown county on March 1 and should have been taxed. The statements are not libelous *per se*. It is not charged that Judge Stuart made any misrepresentation as to the money on hand or that he is guilty of any wrong or fraud. The statute provides for the listing of property for taxation and every person when called upon by an assessor is required to make a verified statement of the personal property which he is required to list either as owner or in any other capacity. It is also provided that if he fails to make such a list or statement when called upon or knowingly makes a false one he will be guilty of a misdemeanor. (Gen. Stat. 1909, § 9225.) As we have seen, the publication does not imply that Judge Stuart failed to list any of his own property, nor does it carry the implication that he made a false statement as to his brother's property. The language is not ambiguous and manifestly it has no covert meaning. It does not charge Judge Stuart with a purpose to wrong or defraud the state or of having done so at all. There is no statement either that any one understood the language

to convey the meaning that he was guilty of wrong or fraud, and in the absence of explanatory averments the language does not state an offense. (*O'Connell v. Shontz,* 126 Iowa, 709, 102 N. W. 807.) The statement is no more than to say that because the money of his nonresident brother was in Brown county on March 1 it was subject to taxation. The writer assumed, as all others interested appear to have done, that the money, $5239, belonged to a nonresident, and the only question of dispute was whether that money, which happened to be in Brown county on March 1, was subject to taxation. That raised a question of law, and the commissioners determined that the money was not subject to taxation in Kansas. The defendant expressed a contrary opinion, but even if the defendant is mistaken as to the law upon the point it would hardly subject him to prosecution and to punishment. The money collected by Judge Stuart as the agent of his brother is not necessarily to be listed or returned for taxation. It is provided that money collected by an agent which is to be immediately transferred to the principal shall not be listed by the agent for taxation. (Gen. Stat. 1909, § 9221.)

It is clear that the publication is not libelous on its face, and the question arises whether the information has been strengthened by the innuendo. It is alleged in the innuendo that the defendant implied that Judge Stuart had $5239 on hand subject to taxation which he had failed to list, and that he had falsely sworn to a personal-property statement and had thereby committed a crime. The purpose of an innuendo is to explain the meaning of published words to which it refers and not to add to or restrict the obvious and natural meaning of the published words. (*The State v. Osborn,* 54 Kan. 473, 38 Pac. 572; *The State v. Grinstead,* 62 Kan. 593, 64 Pac. 49; *Cooper v. Seaverns,* 81 Kan. 267, 105 Pac. 509, 25 L. R. A., n. s., 517, 135 Am. St. Rep. 359.) As we have seen, the publication is not libelous *per se,* and it can not be said that it is ambiguous, ironical, or that it was used in a double sense. The published words are not open to the meaning attributed to them by the innuendo and the natural and obvious meaning of words can not be changed or enlarged in that way. The publication is that the property of the nonresident was in the county and therefore subject to taxation, while the meaning ascribed to the publica-

tion by the innuendo is that Judge Stuart had falsely sworn to his personal-property statement and had made a false return of his property. Whether the language used will bear the interpretation or will convey the meaning attributed to it in the innuendo is a question of law for the court. That employed by the defendant is obvious and it is clear that the innuendo places a construction upon it which it will not bear. The rule in such a case has been thus stated in section 338 of the third edition of Newell on Slander and Libel:

"Where the words can bear but one meaning, and that is obviously not defamatory, no innuendo or other allegation in the pleadings can make them so, and no action lies. No parol evidence is admissible to explain the meaning of ordinary English words, in the absence of special circumstances showing that the words do not bear their usual signification. 'It is not right to say that a judge is to affect not to know what everybody else knows—the ordinary use of the English language.'"

(See, also, 25 Cyc. 449; 18 A. & E. Encycl. of L. 981; Townshend on Slander and Libel, 4th ed., § 336; Note, 31 L. R. A., n. s., 140; Newell on Slander and Libel, 3d ed., §§ 751, 752; *Nichols v. Daily Reporter Co.,* 30 Utah, 74, 83 Pac. 573, 3 L. R. A., n. s., 339, 116 Am. St. Rep. 796, 8 Ann. Cas. 841.)

It must be held that the information does not charge an offense, and therefore the judgment of the district court is reversed and the defendant is discharged.