Burton v. Dickson.

---

No. 22,028.

ELLA S. BURTON, *Appellant;* v. W. T. DICKSON et al. (Members, etc., of the Kansas State Grange), *Appellees.*

SYLLABUS BY THE COURT.

1. STATE GRANGE — *Expulsion of Member* — *Hearing before Executive Committee—Accusation—Notice—Order of Suspension—Appeal—Affirmed by State Grange—No Liability for Damages Resulted.* The executive committee of the Kansas State Grange of the Patrons of Husbandry, a voluntary association, such committee having authority to suspend an officer who proved inefficient or derelict in the discharge of duty, made an order suspending the worthy lecturer, without having first given her an opportunity to be heard. She appealed to the state grange, which took no direct action on the appeal, but sustained a ruling of the presiding officer that a motion to hear her thereon was out of order. The record of the suspension recited that it was made "pending further investigation," and the committee prepared for a formal hearing, but abandoned it on the ground that the appeal had deprived them of jurisdiction. *Held,* that the action of the state grange amounted to an affirmance of the order of suspension, and was conclusive upon the appellant, and that if the officer's legal rights were invaded, her injury was at the hands of the grange, and that no

Burton v. Dickson.

action would lie against the members of the committee on account thereof.

2. SAME. The executive committee appointed a committee to try a member of the state grange against whom charges had been made. The accused objected to being tried by any committee selected by it, and refused to take part or appear further in the matter, on the ground that the executive committee was the "aggrieved party" and therefore interested in the result. The trial committee so appointed heard evidence and reported that the charges were sustained. The report was approved by the executive committee, which imposed the penalty of expulsion. The accused appealed to the state grange, where her appeal was treated in the same manner as that from the order of suspension referred to in the preceding paragraph. She brought action against the members of the executive committee and the person who signed the charges against her, for damages on account of her wrongful expulsion. Held, (a) that in such action she cannot complain of a formal defect in the execution of the charges, or of the failure to furnish her a copy of them, or of prejudice on the part of members of the trial committee, because such objections were not made at a time when if well taken they could have been remedied; (b) that the action of the executive committee was authorized by a provision in the laws of the order giving it power to hear charges against a member between the annual sessions of the state grange; (c) that the order of expulsion was valid and is binding upon the plaintiff and the courts; and (d) that if the state grange was in fault in failing to àct directly upon the appeal, the defendants are not responsible therefor.

3. SAME—*Facts Printed in Circular—Circular Distributed—No Cause of Action for Libel Shown.* Where under the circumstances stated in the foregoing paragraphs the executive committee causes a circular to be printed for distribution among the members of the order, reciting such suspension and expulsion, and giving in detail the steps taken leading up thereto, such circular is qualifiedly privileged, and the fact that it is incidentally brought to the attention of others than members does not deprive it of that character; and further held, that no substantial evidence of actual malice in its publication was shown.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed April 12, 1919. Affirmed.

*W. P. Hackney, S. A. Smith, S. C. Bloss,* all of Winfield, and *Edwin D. McKeever,* of Topeka, for the appellant.

*A. M. Jackson, A. L. Noble,* both of Winfield, and *A. E. Crane,* of Topeka, for the appellees.

The opinion of the court was delivered by

MASON, J.: Ella S. Burton sued the master of the Kansas State Grange of the Patrons of Husbandry, a voluntary association for mutual benefit, and the members of its executive committee (joining as a defendant another member of the grange), asking damages for injuries suffered from their conduct. Her petition was made up of seven causes of action: the first was based upon her wrongful suspension as an officer (worthy lecturer) of the state grange; the second upon her wrongful expulsion as a member of that body; and the others upon libel, consisting of the publication in various ways of a statement purporting to give in considerable detail the facts regarding such suspension and expulsion. A demurrer to the plaintiff's evidence was sustained, and she appeals.

1. On January 3, 1916, the executive committee made an order suspending the plaintiff as worthy lecturer. A record of the order was made reciting that she was suspended "pending further investigation." She testified that the quoted words were added to the record a few days later, but this does not appear to be material to the present inquiry. The authority of the committee was derived from a section of the constitution of the state grange reading:

"The Master and Executive Committee shall be empowered to suspend from office any officer of the State Grange who may prove inefficient or derelict in the discharge of his duty, subject to appeal to the next meet of the State Grange."

The plaintiff protested against the action of the committee in undertaking to suspend her without notice and an opportunity to be heard. On January 17, 1916, the committee had another meeting, at which the plaintiff was present. They had then employed a lawyer. They presented no charges to her, but she "indirectly saw" some they had gotten up. Before any steps were taken for the consideration of these charges, the plaintiff gave notice of an appeal to the state grange. The members of the committee appear to have taken the position that the appeal stayed all further proceedings and transferred the whole matter of the suspension to the state grange, which met annually. At all events, they took no further action in that regard. At the meeting last referred to there was some

discussion with reference to a possible settlement, but no agreement was reached.

At the next meeting of the state grange a motion was made that the plaintiff have a hearing in her defense. The presiding officer declared the motion out of order. An appeal was taken from the ruling, which was sustained by a vote of 129 to 25. This appears to have been the end of the matter so far as concerns the suspension.

The evidence shows that prior to the suspension differences of opinion in relation to grange matters had arisen between the plaintiff and the defendants and that considerable controversy and mutual criticism had taken place.

Inasmuch as the power granted to the executive committee to suspend an officer of the state grange was to be exercised only in the event that he had proved inefficient or derelict in the discharge of his duty, probably no order of suspension, even one intended to be effective only until a full investigation should be had, ought to have been made without notice and an opportunity to be heard, regardless of any express provision to that effect. Whether the members of the committee were right or wrong in assuming that their jurisdiction in the matter was cut off by the appeal is immaterial. The appeal carried to the state grange the question of the irregularity, as well as the wisdom, of the action of the committee. The court is of the opinion that the failure of the grange to grant relief to the plaintiff, and its vote in sustaining the ruling that the motion to hear her was out of order, amounted to an approval of the course of the committee, or to a decision that the appeal had not been properly taken; that its decision was conclusive upon her; that if in omitting to take more definite action on the appeal the state grange is to be regarded as having failed to perform its duty in the matter, the fault was that of the grange, and is not to be imputed to the defendants in this action; that if the plaintiff's legal rights were invaded in this respect, her injury was at the hands of the grange itself; and that no action for damages on account thereof lies against these defendants.

2. On March 3, 1916, J. W. Robinson (the defendant herein who was not a member of the executive committee) signed charges against the plaintiff upon which he asked that she be

tried according to the usages of the order. Notice was given her of a meeting of the executive committee to consider the matter, and she attended it. A committee of five was appointed to conduct the trial. The plaintiff made a written objection on the ground that the executive committee was the "aggrieved party" and therefore interested in the result. She testified that she "objected to being tried by any committee they would select," saying "I had no properly organized trial committee and refused to be tried by a 'Kangaroo Court.'" The plaintiff did not answer the charges, did not appear before the trial committee, and took no part in its proceedings. It took evidence and reported that the charges were sustained. The executive committee approved the report and made an order expelling the plaintiff as a member of the state grange. The plaintiff gave notice of an appeal to that body. There the proceedings were the same as already stated with respect to the suspension matter—that is to say, no action was taken directly upon the appeal, but a motion to allow the plaintiff to be heard in her defense was ruled out of order, and the grange sustained the ruling.

The plaintiff makes various objections to the regularity of the proceedings resulting in the order for her expulsion. The rules require that charges against a member shall be signed by the complainant, and indorsed by two other members of the order in good standing. Here the charges were signed by J. W. Robinson, and after his signature were those of two other persons, preceded by the words "witnessed by." It is argued that the charges were defective, because witnessing the document was not equivalent to indorsing it, and because there was no evidence that the additional signers were members of the order. Objections are also made that some of the members of the trial committee were prejudiced against the plaintiff, and that no copy of the charges was furnished to her. In view of the fact that she stood upon her objection that the executive committee had no right to appoint a trial committee, and refused to have anything to do with the further proceedings, we do not regard any of these objections as now available to her. The defects pointed out are all of such a character that had attention been called to them before the trial they might have been remedied.

It is suggested in behalf of the plaintiff that she was not a member of the state grange and therefore could not be tried by it, but only by the subordinate grange to which she belonged. Her petition, after alleging that the defendant Reardon was the master of the state grange, and that the defendant Robinson was a member of it, adds: "That the plaintiff was, at all times hereinafter mentioned, a member in good standing in said grange," the reference apparently being to the state grange. However that may be, she testified to having received the degree of Flora in the state grange, which seems necessarily to imply membership, and she appears also to have been a member by virtue of her husband having been master of a Pomona (or district) grange.

The plaintiff strongly contends that the executive committee had no power to cause her to be placed on trial—that the state grange alone had jurisdiction to expel one of its members. Elaborate provisions are made for trials of charges against its members under the supervision of the state grange. But the judiciary act of the order contains sections reading:

"The Executive Committee of a State Grange, at the request of the master, may hear cases of charges against a member of a State Grange, in the intervals between the meetings of the State Grange, and their decision is binding until reversed by the State Grange.

"When the laws of a State Grange are in any respect deficient, and do not specifically provide for emergencies which may arise in the administration of its affairs, then, in the intervals between the meetings of the State Grange, the master and the executive committee are the highest executive and administrative officers, and are clothed with authority to do all acts necessary for the maintenance of law and order and for the good of the order in the state, and make such rules and create such tribunals as the exigencies of the case may demand: *Provided,* that in so doing they do not transgress the written laws of the order or the enactments or orders of the State Grange."

These provisions seem to make the executive committee of the state grange the governing body during the intervals between the meetings of the grange, and clearly authorize it, if the grange is not in session, to take the steps with regard to a trial which would otherwise devolve upon that body. Most, although not all, of the acts of the plaintiff on which the charges against her were founded, related to matters which had taken place before the annual meeting of the state grange in December, 1915, and it is urged that if it had been the purpose to put her on trial on account of them, the proceedings

should have been begun soon enough to admit of a hearing before the grange at that time, on the theory that the purpose of conferring power on the committee to conduct trials was only in order that it might act in an emergency arising between sessions. Such a limitation is not expressed, and we do not think it is fairly to be implied.

A printed copy of the proceedings of the state grange at the annual meeting in 1916, which seems to have been deposited here as a part of the record, but which is not otherwise shown to have been introduced in evidence, recites the giving of an opinion by the national master, after consultation with his associates in the court of appeals of the order, in effect approving the course of the executive committee in regard to the expulsion of the plaintiff, and indicating that the appeal therefrom had not been taken to the proper tribunal. The judgment of this court, however, is not based in any degree upon this ruling.

The conditions under which a member of a voluntary association may be expelled have been thus stated:

"Notwithstanding property rights may be involved, an association may sever relations with an offending member upon these conditions: That he is charged with conduct for which expulsion is a proper penalty if he be guilty; that he has reasonable notice of the charge and opportunity to defend himself against it; that he is given a fair hearing; that a decision is rendered against him in good faith; and that he is not denied the benefit of any special rule that may exist relating to the matter." (*Harris v. Aiken,* 76 Kan. 516, 520, 92 Pac. 537.)

We find that these conditions are met here. Evidence that the members of the executive committee believed that the charges against the plaintiff were well founded, and desired for that reason that she should be expelled, or even that they entertained actual ill will toward her, would not tend to show a want of good faith in the decision such as to vitiate its effect. The plaintiff's expulsion having been the result of a trial conducted in accordance with the rules of the order, in which opportunity to be heard was given, is not open to attack in the courts. The question whether the conduct of the plaintiff had actually been as charged in the complaint against her, and, if so, whether it called for the severance of her relations with the grange, being matters of internal government and discipline of the order, are for the final determination of its tribunals. (19 R. C. L. 1224, 1225; 5 C. J. 1357.)

If the plaintiff took the steps necessary to effect a proper appeal to the state grange, and that body wrongfully failed to act upon it, no liability attaches to the defendants on that account, because this misconduct was not theirs, and did not occur until after the acts complained of in the petition had been completed.

3. After the order of expulsion had been made, the executive committee caused two thousand copies of a circular to be printed, to be sent to the various granges for distribution, stating that the plaintiff had been suspended as worthy lecturer, and expelled from the state grange (involving expulsion from the order), and giving in detail the various steps that had been taken leading up to these orders. By direction of the committee, a large number of these circulars were mailed to officers and members of the subordinate granges. Several of them were left on the cigar counter in the state house, but it was not shown by whom this was done. Copies reached the hands of persons who were not members of the order. Several newspapers printed stories of the suspension and expulsion, in more or less detail, but there is nothing to indicate that this was by the procurement of the defendants, further than that the information for them was doubtless derived from the circular, and this would not be sufficient to impose a liability upon them in that respect. (*Burt v. Advertiser Newspaper Co.*, 154 Mass. 238.)

The third cause of action is based upon the distribution of these circulars, and the fourth, fifth, sixth, and seventh upon the newspaper publications referred to.

The circular was qualifiedly privileged, so far as concerns its distribution among members of the order, and the fact that it was incidentally brought to the attention of others does not deprive it of that character. (*Redgate v. Roush*, 61 Kan. 480, 59 Pac. 1050.) And the court is of the opinion that, however much mutual distrust may have existed between the plaintiff and the defendants, there was no substantial evidence of actual malice in connection with the preparation and sending out of the circulars. The language used did not suggest it. The document was a mere recital, the essential correctness of which does not appear to be challenged, of what had taken place. The plaintiff's objection to it appears to be, not that the facts were

not stated with accuracy, but that the statements that she had been suspended as an officer and expelled as a member were libelous because the orders made were not effective on account of the irregularity of the proceedings and of the want of power in the executive committee to make them. Assuming that the executive committee acted without due authority, and that the decision of the trial committee was wrong, the publication of the fact that the proceedings had taken place, and that the orders had actually been made, would have been true and would not have supported an action for damages. (*Hanson v. Bristow,* 87 Kan. 72, 123 Pac. 725.) If the circular, being a mere recital of what had actually taken place, could be capable of sustaining a charge of libel at all, irrespective of privilege or motive, this could only be on the rather technical ground that in the course of its narration of events it stated what the charges were that had been made against the plaintiff. The charges upon which the expulsion was based may be thus summarized: disobedience of orders of the executive committee; engagement in bitter controversy with officers and members of the grange; wrongfully accusing a member of disloyalty to the order and of being the mouthpiece of trusts and corporations, and alleging that the master and executive committee were his tools (the plaintiff admitted making such accusation and saying that the member referred to had great influence over the master) ; showing contempt for the master and his decisions; disregarding the result of an arbitration; making public incorrect statements of grange proceedings; and promoting discord in the order. The real essence of the plaintiff's grievance is the conduct of the defendants which resulted in her suspension and expulsion. While her case is presented in part as one of libel, any real injustice done her lay, rather in making the orders suspending her as an officer and expelling her as a member, than in advising the public that such orders had been made. There is in this decision no implication that she is regarded as having so conducted herself as to deserve the treatment she has received. The affirmance of the judgment results from the view that her redress for any injury done her lay with the organization of which she was a member, and that when it refused her relief, no remedy remained.

The judgment is affirmed.

MASON, J. (dissenting in part) : I concur in the conclusion reached by the court, except with respect to the first cause of action. It is my judgment that the circumstances under which the order suspending the plaintiff as an officer was made, especially the omission to give her an opportunity to be heard before it took effect, made it a question for the determination of the jury whether the action of the committee in that respect was such an invasion of her rights as to make its members answerable to her for any injury caused thereby.

JOHNSTON, C. J., joins in the partial dissent.

---

### OPINION DENYING A REHEARING.
(Filed May 10, 1919.)

The opinion of the court was delivered by

MASON, J.: In the original opinion in this case it was stated that the committee appointed to hear the charges against the plaintiff in its report recommended her expulsion. In a motion for a rehearing the plaintiff calls attention to the fact that it was not the province of that committee to make any recommendation concerning the penalty to be assessed, and that it made none. The criticism is well founded, and while the legal questions involved are not affected, the language of the opinion will be changed so as to show, in accordance with the fact, that the penalty of expulsion was imposed by the executive committee upon its own initiative.

The contention is made in the motion that the sections of the judiciary act giving the executive committee authority to hear and decide charges against members of the state grange, in the intervals between the meetings of that body, were repealed by implication through the subsequent adoption of a code concerning trials, containing a section repealing all former rules and regulations in conflict therewith. The new code referred to was a revision of a former code which had been in force at the same time with the sections of the judiciary act referred to. We do not think these sections are to be regarded as in conflict with the new code, or as covered by its repealing clause.

The plaintiff challenges the statement in the opinion that "if

the state grange was in fault in failing to act directly on her appeal the defendants are not responsible therefor," (*ante*, p. 595, syl. ¶ 2), and in support of the challenge argues that the course taken by the grange was due to the conduct of the defendants in suppressing her appeals and not allowing them to come before that body. Any misconduct of the defendants in this regard must have taken place after the acts complained of in the petition, and was not charged therein.

In the original opinion it was said that the plaintiff appeared to have been a member of the state grange in virtue of her husband having been the master of a Pomona grange. In the motion for a rehearing she asserts that her husband had occupied that position, but not at the time of the trial and expulsion. The defendant's counter-abstract contained a statement that at the trial it was admitted that the plaintiff's husband was the master of a Pomona grange "at the time these charges were preferred." This was challenged by the plaintiff in her brief, but the fact could not be determined here, because no complete transcript of the evidence had been made. A necessity for its determination does not arise, for the result already announced will be adhered to without regard thereto.

The motion for a rehearing is denied.