Flynn v. Brotherhood of Railroad Trainmen.

---

No. 23,782.

MARY FLYNN, *Appellee*, v. THE BROTHERHOOD OF RAILROAD TRAINMEN, *Appellant*.

### SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE—*Violation of Rules of the Order—Authorized Expulsion of Member*. A by-law of a mutual benefit association of railroad employees, which provides that if a member refuses to abide by the action of its general grievance committee he shall be expelled, is sufficient to authorize the expulsion of a member for petitioning a railroad official to modify a rule relating to seniority among employees which had been formulated by such grievance committee and adopted by the company after negotiations with it.

2. SAME—*Association of Railroad Employees—Not Against Public Policy—Not Unconstitutional*. The action of a group of employees in agreeing with one another that whatever negotiations they have with their employer with reference to privileges to be accorded them shall be conducted through their organization—collectively and not individually—is not void as against public policy or in conflict with the constitutional guaranty of the right of petition.

3. SAME — *Expulsion of Member — Order Valid*. Various objections to the validity of an order of expulsion are held not to be well founded.

4. SAME—*Conduct of Association No Waiver of Defense of Expulsion of Deceased Member*. Where an amount paid as an assessment or dues upon a beneficiary certificate is returned for the stated reason that the holder had been expelled, the retention of a payment made at the same time for an additional charge of one dollar for another purpose does not effect a waiver of a defense to the collection of the certificate on the ground of such expulsion, especially when there is no showing that the additional charge was not due prior to the expulsion.

Flynn v. Brotherhood of Railroad Trainmen.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. Mc-CAMISH, judge. Opinion filed June 10, 1922. Reversed.

*A. L. Berger,* of Kansas City, *L. C. Boyle,* and *A. E. Watson,* both of Kansas City, Mo., for the appellant.

*E. A. Enright,* of Kansas City, for the appellee.

The opinion of the court was delivered by

MASON, J.: The widow of Patrick J. Flynn, who was a yardman in the employ of the Missouri Pacific Railroad Company, brought this action against the Brotherhood of Railroad Trainmen upon a beneficiary certificate issued by it to her husband. Payment was resisted, the defense being that he had been expelled from that organization several years before his death. Judgment was rendered in favor of the plaintiff on the ground that the expulsion proceedings were invalid. The defendant appeals.

1. An order was made by the lodge of which the plaintiff's husband was a member (No. 281) expelling him from the brotherhood upon written charges and after a hearing, of the regularity of which no complaint is made except as hereinafter indicated. Under the laws of the order he might have appealed from the decision against him, first to the president and later if he desired to the grand lodge, but he took no appeal. The defendant urges that he was bound to exhaust his remedies within the organization before invoking the aid of the courts. This is the accepted rule with respect even to associations, membership in which carries property rights (*Modern Woodmen v. Taylor,* 67 Kan. 368, 71 Pac. 807) subject to this exception— if an order of expulsion is made by a tribunal of the society acting without jurisdiction, or in disregard of the accused member's fundamental rights, as for instance where no opportunity for a hearing has been given him, relief at the hands of a court may be sought in the first instance. (*Rueb v. Rehder,* 24 N. M. 534, and cases there cited. See, also, 19 R. C. L. 1226, 1230, 1253, 1256; 5 C. J. 1359; 7 C. J. 1123; *Supreme Lodge K. P. W. v. Wilson,* 66 Fed. 785; *Tucker v. Kirkpatrick,* 106 Kan. 881, 189 Pac. 946; *Id.,* 107 Kan. 541, 192 Pac. 834.)

The charge made against the plaintiff's husband was that he co-operated with others "in interfering with the working of the local grievance committee" of his lodge; that he affixed his signature with others (including members of other organizations) to a petition em-

bodying a request "that the seniority rights of foreman as established by local grievance committee of B. of R. T. of Missing Link Lodge No. 281, be changed to suit the demands of following committee"—a committee being named composed of three members of the defendant association and three of the Switchmen's Union of North America. The charge included a recital that the petition had been presented to the superintendent about July 5, 1913.

The petition referred to in the charge, which was signed by the plaintiff's husband, and was addressed to the Missouri Pacific superintendent, read as follows: "We, the undersigned, employees of the Kansas Terminal [a phrase which was explained as referring to the Kansas City terminals of the Missouri Pacific] hereby petition you to restore to us our seniority, or grant us a hearing at which time we can present our side of the question to you, inasmuch as we do not think the prevailing seniority list is just and fair." The petition had reference to a rule of the company which had been put in force by an agreement between the brotherhood and the executive officers of the railroad, having been formulated by the general grievance committee of the former. It read: "Any yardman refusing to accept promotion when tendered will relinquish his rights in favor of the next senior man and shall not be eligible to subsequent promotion until another vacancy occurs." There was evidence that of some 7,000 employees who were affected by the rule only the signers of the petition, some seventy-five in number, were dissatisfied with it.

The laws of the order contained the following provisions:

"Whatever action may be taken by the General Grievance Committee or Board of Adjustment of any system within the meaning of the above general rules, shall be law to the lodges on that road until the next meeting of the Grand Lodge, and if any member refuses to abide by the action of said General Grievance Committee, or Board of Adjustment, he shall be expelled from the Brotherhood for violation of obligation."

"Any member considering that he has been unjustly dealt with by his employer, or that he is otherwise aggrieved, shall make a statement of the grievance in writing and present the same at a meeting of the lodge. The lodge shall then determine by a majority vote of the members present, employees of the division, whether to sustain or reject the grievance. Should the grievance be sustained the local grievance committee shall lay the matter before the trainmaster, superintendent or other proper officer and use every means to effect a satisfactory settlement and report their action and all things pertaining to the case to the lodge. If the result is not satisfactory, it may be referred to the General Grievance Committee for further action. A member or a lodge may withdraw a grievance placed in the hands of a General Grievance

Committee, provided such action is taken before said grievance has been presented by the General Grievance Committee to the officers of the company, but not thereafter."

The district court made this finding: "That the expulsion proceedings against Patrick J. Flynn in August, 1913, were invalid, being based on alleged acts of Patrick J. Flynn, against the doing of which the constitution and by-laws of the defendant provided no penalty of expulsion."

In the course of a discussion concerning the issues, preliminary to the introduction of evidence, the attorney for the plaintiff made this statement: "This thing simmers right down, I am frank to say, from my standpoint it is wholly a question of law. If those charges are covered by the constitution, I think the suit was defeated. I do not think the charges were provided by the constitution. I think the whole act was void; that is my contention."

We think it was competent for the lodge of which the plaintiff's husband was a member to decide that in petitioning an official of the railroad company for a change in the practice in regard to seniority rights of employees he was guilty of refusing to abide by the action of the general grievance committee—conduct which made him subject to expulsion. The written rule on the subject, a modification of which was sought, was shown to have been the result of the action of the general grievance committee in consultation with representatives of the railroad company. It has been argued that he had not refused to abide by the order of the grievance committee —that one "may wish to have a law changed and yet he may not be in open rebellion against the law." The signers of the petition did not indeed by that act declare that they would not be bound by the rule as it existed, but there was no way in which they could resist its enforcement, which did not rest with them. Those of them, however, who were members of the brotherhood had a means provided within their organization for endeavoring to obtain such a change in the rule as might be desired. And when they declined to avail themselves of this method and undertook to go over the heads of their associates, it required no forced or unnatural construction of language to say that they refused to abide by the action of the general grievance committee of the order, which had decided that the existing rule was the one for which the organization should stand. A member of the brotherhood can hardly be regarded as abiding by the action of the grievance committee while he was endeavoring through

outside channels to procure the undoing of the results it had accomplished in obtaining the acceptance by the railroad company of the priority rule it had formulated.

2. In behalf of the plaintiff it is argued that if the provision quoted is interpreted as justifying the expulsion of a member of the order for attempting by outside means to bring about a change on the part of the railroad company in a method of treating its employees which had been adopted at the instance of the order, such interpretation renders it void and unenforceable because in conflict with the constitutional guaranty of the right of petition. *Spayd v. Ringing Rock Lodge,* 270 Pa. St. 67, with the note thereto in 14 A. L. R. 1446, is cited in support of the argument. In that case a by-law of a mutual benefit society authorizing the expulsion of a member for petitioning the legislature to repeal a statute was held to be void. Our state constitution provides that "The people have the right . . . to petition the government, or any department thereof, for the redress of grievances." (Bill of Rights, § 3.) The petition here involved was dated June 10, 1913. At that time the railroads were not in the hands of the government, and a railroad superintendent was not a public official. We see no sufficient reason for considering it against public policy for a group of employees to agree with one another that whatever negotiations they have with their employer with reference to privileges to be accorded them shall be conducted through their organization—collectively and not individually.

3. The plaintiff contends that it was neither charged nor proved that the petition in question was ever presented to the official addressed. As already stated the charge recited such presentation to have been made, and there was sufficient evidence that it reached the superintendent's hands. The question of fact, moreover, was one for the determination of the tribunal provided by the order. (*Burton v. Dickson,* 104 Kan. 594, 600, 180 Pac. 216, 775.) The suggestion is made that the by-laws give no authority for a committee to prefer charges or act upon them. The right to expel members is clearly granted, and in the absence of express provisions any procedure resulting in a fair trial is unobjectionable. It was admitted that "charges were preferred and a trial was had before a committee provided by the by-laws and that they pronounced judgment against Mr. Flynn." In the plaintiff's brief it is said: "It is unnecessary herein to complain against the good faith of the Flynn expulsion episode, although there was a wholesale slaughter of about eighty

benefit certificates in a moment of passion all to be restored except Flynn's." The reference doubtless is to other members of the brotherhood who signed the petition to the superintendent. The fact, if it be a fact, that all excepting the plaintiff's husband were restored does not suggest bad faith, for there is no showing that he applied for restoration.

4. After the expulsion of Flynn, the plaintiff made a payment to the secretary of the lodge of $3.75, $2.75 being for the assessment or dues, and $1 (as she testified) for the grievance committee. The $2.75 was returned to her. It is contended that the retention of the $1 amounted to a waiver of the defense made. The amount paid on the certificate was returned with the express statement that it could not be received because of Flynn's having been expelled during the month. This negatives any inference of an intention to treat him as still a member of the order. There is nothing to indicate that the $1 that was withheld was not for a charge that had already accrued, and it obviously was retained upon that theory.

The judgment is reversed, and the cause is remanded with directions to render judgment for the defendant.