No. 27,525.

THE ALLIS-CHALMERS MANUFACTURING COMPANY, *Appellee,*
v. R. F. LOWRY, *Appellant.*

No. 27,529.

THE ALLIS-CHALMERS MANUFACTURING COMPANY, *Appellee,*
v. R. P. SWARTZ, *Appellant.*

No. 27,621.

JENNIE M. NEFF, *Appellant,* v. THE J. I. CASE THRESHING
MACHINE COMPANY et al., *Appellees.*

No. 27,622.

CHARLES NEFF, *Appellant,* v. THE J. I. CASE THRESHING MACHINE
COMPANY et al., *Appellees.*

(261 Pac. 828.)

SYLLABUS BY THE COURT.

LIBEL AND SLANDER—*Privileged Communications—Notice to Grain Dealers to Protect Mortgagee's Interest in Wheat.* Where a creditor of a wheat grower who held a chattel mortgage on part of his debtor's wheat crop served written notice of his interest in such crop to each of the grain buyers doing business in the locality where the crop was grown and likely to be marketed, in which notice the creditor-mortgagee requested if the mortgaged wheat were delivered without the written consent of the mortgagee that payment therefor be withheld except to the mortgagee's authorized agent, and in which notice also the mortgagee requested to be advised if the mortgaged wheat should be otherwise disposed of, *held:* (*a*) The written notice summarized as above and set out in full in the opinion contained nothing defamatory to the mortgagor nor any matter fairly susceptible of such an interpretation; (*b*) the contents of the notices were privileged; (*c*) certain inaccuracies in some of the notices touching the land descriptions on which the mortgaged wheat was grown wrought no damage to the mortgagor; and (*d*) the fact that the receipt of such notices caused the local grain buyers to defer payment on unmortgaged wheat delivered by the debtor was no fault of the creditor-mortgagee.

---

Libel and Slander, 36 C. J. pp. 1262 n. 5, 1265 n. 61; 37 C. J. pp. 69 n. 46, 131 n. 78.

Allis-Chalmers Mfg. Co. v. Lowry.

Appeal from Seward district court; GEORGE L. LIGHT, judge. Opinion filed December 10, 1927. Affirmed.

*F. S. Macy, R. C. Eastman, Charles M. Tucker, H. A. Gaskill,* all of Liberal, *F. Dumont Smith, Eustace Smith* and *Arthur Symns,* all of Hutchinson, for the appellants.

*F. O. Rindom, John C. King,* both of Liberal, *Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, James G. Norton, W. E. Stanley,* all of Wichita, *Oscar D. McCollum* and *Gibbs A. Aucoin,* both of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

DAWSON, J.:    These four actions had their inception in certain business transactions between plaintiffs and defendants which eventually culminated in damage claims or cross claims for libel of the person and slander of title of personal property.

Briefly stated, in No. 27,525, the Allis-Chalmers Manufacturing Company sued R. F. Lowry, a Seward county farmer, on three overdue promissory notes aggregating $1,605.87, secured by a chattel mortgage on three-fourths interest in 320 acres of wheat, crop of 1926, for which it prayed judgment and to foreclose its mortgage.

Defendant Lowry filed an answer admitting the execution of the notes and mortgage. He also filed a cross petition in six counts for $66,494.13 as damages because the plaintiff had served a written notice on a half dozen Seward county grain buyers to the effect that it had a mortgage on defendant's wheat crop grown on certain described lands, and requesting that if the mortgagor should deliver any of that wheat crop without a written release from the mortgagee the grain buyer addressed would please withhold payment therefor except to some authorized agent of the mortgagee, and also advise the mortgagee of any other disposition of such wheat crop by the mortgagor. The text of this notice and request reads:

"You are hereby notified that the undersigned, Allis-Chalmers Manufacturing Company (Incorporated), has a mortgage on all crops of three-fourths of 320 acres of wheat raised during the season of 1926, on the south one-half (½) of section ten (10), township thirty (30), range thirty-three (33), Haskell county, Kansas, and we hereby respectfully request, if any of said crop is delivered at your elevator or warehouse by said R. F. Lowry, Liberal, Kansas, or anyone for him, without written release from said Allis-Chalmers Manufacturing Company (Incorporated), or its authorized agent, that you will mark the tickets therefor 'mortgaged' and make them out in the name of the said mortgagee, Allis-Chalmers Manufacturing Company (Incorporated); that you will not cash any of said tickets unless presented for payment by a duly

authorized agent of said mortgagee; that you will not pay for any of said crop in any manner without the consent of said mortgagee or its authorized agent, or until said crop is released from said lien, and that you will kindly notify said mortgagee when said crop is being delivered, whether to you or to someone else, or if it is being shipped direct by said mortgagor.

"ALLIS-CHALMERS MANUFACTURING COMPANY (INCORPORATED),
"By O. J. THOMAS."

Plaintiff's demurrer to the several causes of action set up in defendant's cross petition based on the foregoing writing was sustained. Defendant Lowry appeals.

In No. 27,529, the same plaintiff sued defendant R. P. Swartz on two promissory notes, amounting to $965.10, secured by a chattel mortgage on 160 acres of wheat and other chattels, for which judgment and foreclosure were prayed.

Defendant filed an answer and cross petition, admitting the execution of the notes and chattel mortgage, but setting up eight causes of action for damages in the sum of $85,861.99 on account of the publication among the Seward county grain buyers of a written notice and request similar to that set out above in Lowry's case, except in matters of land description and other details of no present importance.

Plaintiff's demurrer to this cross petition was sustained, and defendant Swartz appeals.

In cases No. 27,621 and No. 27,622, Jennie M. Neff and Charles Neff, her husband, brought separate actions for damages aggregating $152,870 for libel of the person and slander of title to personal property because of a publication among the Seward county grain buyers by the J. I. Case Threshing Machine Company similar to that of the Allis-Chalmers Company set out above, except as to land descriptions and other details of no present importance. Involved in these Neff cases, however, was one distinct feature growing out of certain misdescriptions of the lands on which the Neff wheat covered by the J. I. Case Company's chattel mortgage was grown. These cases were tried separately and at the close of plaintiff's evidence in each case, a demurrer thereto was sustained. Plaintiffs appeal.

Touching so much of these appeals as questions the propriety of the trial court's rulings on the demurrers to the causes of action or cross action for libel of the person and slander of title founded on the written notices sent to the several grain buyers in the local market centers where these mortgaged wheat crops were grown and

to some or all of whom those crops would most likely be marketed, and to whom they were in fact marketed, a careful reading of these notices discloses no defamatory matter (*State v. Huff,* 96 Kan. 632, 152 Pac. 642) nor anything fairly susceptible of such an interpretation. (*Hanson v. Bristow,* 87 Kan. 72, 123 Pac. 725.)

So far as the statement of facts therein is concerned, the pleadings of the appellants in each case admit that such statement was true. The authors of the written notices did have the interest in the wheat crops they claimed to have under their chattel mortgages. Touching the mortgagee's request that if the wheat were marketed to the grain buyer addressed without a written release of the mortgagee the scale tickets should be marked and payment withheld except to an authorized agent of the mortgagee, that was a perfectly proper, businesslike communication for the mortgagee to make. The specific terms of the chattel mortgages are not reproduced for our perusal, so we must assume they contained the usual recitals of such instruments, which in legal effect would vest title to the wheat in the mortgagee. (R. S. 58-307.) The mortgagor could not lawfully sell the mortgaged wheat without the written assent of the mortgagee and to do so would be a penal offense. (R. S. 58-318.) So the mortgagee was quite within its legal rights in requesting the grain buyers to keep track of the scale tickets and to withhold payment except to its authorized agent. (*Burton v. Dickson,* 104 Kan. 594, 180 Pac. 216, 775.) The request to be advised if the mortgaged wheat was otherwise disposed of by the mortgagor had no semblance of a defamatory writing. It was simply a request for a legitimate business favor, and the request itself, as well as any fair, truthful answer it might have elicited, was privileged under the well reasoned precedents. (*Richardson v. Gunby,* 88 Kan. 47, 127 Pac. 533; *Kozel v. Kozel,* 104 Kan. 530, 180 Pac. 278; *High v. Hardware Co.,* 115 Kan. 400, 223 Pac. 264; 36 C. J. 1262.)

In the Lowry case, counsel for appellant urge particular attention to the fact that the appellant in 1926 had 2,000 acres of wheat which yielded 52,000 bushels, a major portion of which was marketed immediately after harvest and as it was incapable of segregation (by the wheat buyers, presumably) payment therefor was withheld because of the written notices served on the buyers. But the consequences of this circumstance cannot be laid to the mortgagee. A farmer having 52,000 bushels of wheat needs a guardian and not a

lawyer if he cannot make satisfactory arrangements with his creditor-mortgagee to facilitate the marketing of that vast crop because of the comparative bagatelle of a $1,900 debt covering a mere fraction of it.

Counsel for appellants reiterate the adjectives "false, scandalous, and defamatory," which in our opinion are quite improperly ascribed to the written notices. As we have seen, the notices were neither false nor defamatory. The mortgagors executed those mortgages, and these were regularly recorded in the office of the register of deeds. Do appellants mean to admit that they executed some scandalous writings, or merely that the contents of the mortgages were not scandalous, nor was it libelous or scandalous for the register of deeds to record them, but "false, scandalous and defamatory," all three, for the mortgagee to write to the grain buyers concerning its interest in the property covered by these mortgages? We think not. In each case, apparently, the event proved that the mortgagee's communications to the local grain buyers were well advised, for in all the cases here presented the appellants did deliver mortgaged wheat to the local grain buyers without the written consent of the mortgagee. We do not overlook the fact that the recording of the chattel mortgages was constructive notice to the grain buyers of the existence of the chattel mortgages, but grain buyers are busy men, and it is no easy task for them in the rush of the marketing season to consult the records and verify the deliveries and see to it that they do not pay out cash to the wrong person for mortgaged wheat. The written notices were a very practical advantage to the grain buyers as well as to the mortgagees, as in that respect, also, they were privileged. In 36 C. J. 1262 it was said:

"Generally, any communication published by one in good faith to another, in order to protect his own interest or to protect the corresponding interest of another in the matter in which both are concerned, is privileged when the subject matter of the publication makes it reasonably necessary under the circumstances to accomplish the purpose desired."

In the Neff cases evidence was introduced and defendants' demurrers thereto were sustained. But the evidence disclosed nothing of importance. It is true that in these cases the lands upon which the mortgaged wheat was grown were inaccurately described, but plaintiffs showed no damage or prejudice on that account.

Touching the alleged slander of title, the theory of that claim is based on the fact that the marketing of a lot of unmortgaged wheat

was affected by the notices.  But not more so than by the chattel mortgages themselves.  Indirectly the mortgaging of any part of a wheat crop may cause a grain buyer to move cautiously about paying out money therefor.  That is a trait of human nature.  But the law gives sanction to the execution of such instruments and provides a public office for the recording of them; and damage suits will not lie because they are written about fairly and truthfully by or to parties concerned therewith.  Finally, in view of the fabulous sums prayed for as damages in these ill-founded lawsuits it is not easy for this court completely to stifle its mistrust as to their *bona fides* and to feel assured that the judicial machinery of this state has not been used merely to harass the appellees or hinder them in the collection of their due. ·

The judgments of the district court are affirmed.