Filed April 16, 1891.

---

### No. 6.

### EMIG v. DAUM.

CRIMINAL LAW.—*Arson.*—*Married Woman.*— *Husband's Property.*—Under our statute (section 1927, R. S. 1881) a woman is guilty of the crime of arson in burning her husband's barn.

SLANDER.—*Complaint.*—*Overruling Demurrer.*—*Harmless Error.*—Where, in an action for slander, there is no evidence tending to prove a set of words alleged in a paragraph of the complaint, available error can not be predicated on the overruling of a demurrer thereto.

SAME.—*Necessary Extrinsic Facts.*—*Innuendo.*—If extrinsic facts are needed to make the words actionable, it is not sufficient to supply them by way of *innuendo*.

SAME.—*Complaint.*—*Sufficiency.*—The words, "It is the opinion of the people that Mary Daum burnt the barn, and it is mine," are not actionable without an allegation of extrinsic facts showing that the barn spoken of was the property of another, and was worth twenty dollars or upwards.

SAME.—The words, "We had a fire in our neighborhood last night; Lu Daum's barn burnt. I don't know any thing, but the report is that Mary Daum burnt the barn," are not actionable without an allegation

of some extraneous facts giving them a slanderous meaning, and a colloquium to connect them with such facts.

From the Brown Circuit Court.

*F. T. Hord* and *M. D. Emig*, for appellant.

*G. W. Cooper* and *C. B. Cooper*, for appellee.

BLACK, C. J.—This was an action for slander, commenced in the Bartholomew Circuit Court, from which the venue was changed to the court below, in which the appellee recovered judgment for five hundred dollars.

The complaint consisted of ten paragraphs. A demurrer was sustained as to the last five paragraphs, and was overruled as to the first five paragraphs. The overruling of the demurrer is assigned as error.

In *Casey* v. *Hulgan*, 118 Ind. 590, it was held that where, in an action for slander, there is no evidence tending to prove a set of words alleged in a paragraph of the complaint, the defendant can not be injured by the overruling of a demurrer addressed to such set of words, and that no available error can be assigned on such ruling. See, also, *Lipprant* v. *Lipprant*, 52 Ind. 273–4. In the case at bar there was no evidence tending to support the second, third, or fourth paragraphs of the complaint, and the court, in its instructions, directed the attention of the jury to the paragraphs severally, and told them, as to each, that if there was no evidence of the words alleged therein, they should find for the defendant on such paragraph.

We will confine our examination, therefore, to the first and fifth paragraphs. In the first, the appellee, Mary E. Daum, alleged that on the 5th day of November, 1885, the barn of her husband, Philip L. Daum, of the value of eight hundred dollars, situate in Union township, Bartholomew county, in the neighborhood where the appellant, William Emig, resided, was destroyed by fire, and her husband at the time held a policy of fire insurance on said barn for five hundred dollars; that, the next day after said fire,

the appellant, moved and instigated by malice, and intending greatly to injure the appellee in her good name and reputation, and to prevent her said husband from collecting said insurance policy, did, at the town of Edinburgh, in the county of Johnson, in this State, in the presence and hearing of divers good citizens of said State, speak of and concerning the appellee the following false and slanderous words : " We had a fire in our neighborhood last night ; Lu Daum's barn (the said Philip L. Daum's barn meaning) burnt. I don't know anything, but the report is that Mary Daum (the plaintiff meaning) burnt the barn ; " thereby charging that the appellee was guilty of the crime of arson, to the appellee's damage, etc.

The fifth paragraph was the same as the first, except that the words complained of were alleged to have been maliciously spoken on the — day of November, 1885, at Bartholomew county, Indiana, and the words and innuendoes were set out as follows :   " It is the opinion of the people that Mary Daum (Mary E. Daum, the plaintiff, meaning) burnt the barn (the barn of said Philip L. Daum meaning), and it is mine too ; " thereby intending to charge the appellee with the crime of arson.

Our statute defining arson, section 1927, R. S. 1881, provides as follows :

" Whoever wilfully and maliciously burns or attempts to burn any dwelling-house or other building, finished or unfinished, occupied or unoccupied, whether the building be used or intended for a dwelling-house or for any other purpose, * * * the property so burned being of the value of twenty dollars or upwards, and being the property of another, or being insured against loss or damage by fire ; and the burning or attempt to burn being with intent to prejudice or defraud the insurer,—is guilty of arson," etc.

Whatever may have been the purpose of the pleader in the portions of the complaint relating to an insurance policy, it is manifest that neither paragraph can be taken as charg-

ing words imputing the crime of burning the barn in question with intent to prejudice or defraud the insurer.

It becomes proper, then, to inquire whether a woman can be guilty of the crime of arson in the burning of her husband's barn.

Arson is defined by Blackstone as " the malicious and wilful burning the house or outhouse of another man." 4 Blackstone Com. 219. It is defined by Bishop as " the malicious burning of another's house." 1 Bishop Cr. Law, section 559. " The offence is rather against the security of the habitation than the property in it." 1 Bishop Crim. Law, section 577.

In *Ritchey* v. *State*, 7 Blackf. 168, it was said : " Arson is an offence against possession ; and the indictment should aver the property burned, or set on fire, to belong to the person or persons in the actual possession in his or their own right."

In *Snyder* v. *People*, 26 Mich. 106, under the statute of Michigan providing : " Every person who shall wilfully and maliciously burn in the night-time, the dwelling-house of another," etc., shall be punished, etc., it was held that arson is an offence against the habitation, and regards the possession, rather than the property ; and that a husband, living with his wife in a dwelling-house owned by her, was not guilty of arson in burning such dwelling-house.

It was held that in such case the husband had a rightful possession jointly with the wife, and that the statutes of that State for the protection of the rights of married women do not operate upon family relations, and are not inconsistent with the marital unity of husband and wife ; that where they occupy her dwelling-house together, he is there by right, and the house, in legal contemplation, so far as the offence of arson is concerned, is his dwelling house. It was said that it seems that the wife, because of the legal identity, can not be guilty of the offence of arson in burning the husband's dwelling, even though at the time living apart from him, citing

March's Case, Mood. C. C. 182; and that this would doubtless be so held wherever the wife's domicile is regarded in law as identical with the husband's; and that the husband, in setting fire to the house inhabited by himself and his wife, is no more guilty of arson than the wife was, at common law, for a like wrong to the dwelling-house of the husband.

In *Garrett* v. *State*, 109 Ind. 527, it was held that arson, as defined in our statute, is an offence against the property, as well as the possession; and the question of occupancy or non-occupancy, habitation or non-habitation of or in the property, is an immaterial question, in view of the statutory definition of the offence; and that the dwelling-house of a married woman, though occupied by her and her husband as a dwelling or residence, is the property of another person than the husband, within the contemplation of our statute, under which, therefore, a man may be guilty of arson for the burning of his wife's house so occupied.

The common law identity of the wife with her husband made his dwelling-house her dwelling-house, the *domus* of both. Therefore, the burning of the dwelling-house of the husband by the wife was, at common law, the burning of a dwelling-house of which she was in rightful possession. The common law offence of arson was the malicious burning of a dwelling-house in possession of another. But where, as under our statute, arson (not committed with intent to prejudice or defraud an insurer) is an offence against the property of another in a building of any kind of the value of twenty dollars, and not merely against the possession of a dwelling-house, we think it may be committed by a woman in the burning of a barn of such value which is the property of her husband.

We deem it unnecessary to inquire as to how far the marital unity implies a common possession of property in the present state of our law. We can see no satisfactory reason for discriminating between the husband and the wife in the application of our statute in relation to arson.

Do the paragraphs of complaint in question sufficiently show that the appellant, by his language therein set out, imputed to the appellee the commission of this crime ?

When there is no ambiguity in respect to the actionable quality of the words upon the publishing of which the action is founded, no matter of inducement by way of showing it to have such quality by the statement of extrinsic facts is necessary.

Our statute (section 372, R. S. 1881) dispenses with the necessity of stating extrinsic facts to show the application of the defamatory words to the plaintiff, it being sufficient in this regard to state generally that they were spoken of the plaintiff.   But the statute does not dispense with the allegation of extrinsic facts to show the meaning or application of ambiguous language or defamatory language not actionable *per se*.   Such extrinsic facts should be stated by way of inducement.   *Emmerson* v. *Marvel*, 55 Ind. 265.

If extrinsic facts are needed to make the words actionable, it is not sufficient to supply them by way of *innuendo*.   *Innuendoes* are mere corollaries from antecedent allegations. They can not supply averments of facts or extend the meaning of words.   They can not raise questions of fact.   An innuendo is explanatory of a subject-matter sufficiently expressed before.   *Bundy* v. *Hart*, 46 Mo. 460 ; *Nichols* v. *Packard*, 16 Vt. 83 ; *Bloss* v. *Tobey*, 19 Mass. 320 ; *Schurick* v. *Kollman*, 50 Ind. 336.

The words charged in the fifth paragraph before us, omitting the innuendoes, were as follows :   " It is the opinion of the people that Mary Daum burnt the barn, and it is mine."   These words are not actionable without extrinsic matter.   It does not appear from them that the barn spoken of was the property of another than the appellee, or that it was of the value of twenty dollars or upwards.   It is alleged, by way of inducement, that the barn of Philip L. Daum, the appellee's husband, of the value of eight hundred dollars, was burned ; but it is not alleged that these

words were spoken of and concerning Philip L. Daum's barn, or of the barn that was so burned, or of the burning of said barn; so that it can not be said, without resort to the innuendoes, that the words were spoken of and concerning the burning of any certain barn of the value of twenty dollars or upwards.

In *Nichols* v. *Packard*, 16 Vt. 83, a declaration was sustained where the words spoken were: "Nichols burnt it, and he knew it, and I can prove it." But the declaration, besides other prefatory matter, averred that the words were spoken "of and concerning the burning of said store."

If the words have the slanderous meaning, not in themselves, but by reason of some extraneous fact, such fact must be averred in traversable form, with an averment that the words in question were spoken of and concerning the thing alleged, which gives the words a slanderous effect. Newell Def., L. & S. 607.

In *Bloss* v. *Tobey, supra,* it is said that the form of declaring, in actions for slander, appears not to have fluctuated as the mode of construing words has done. "Where the words standing by themselves have no sense or meaning, but with reference to some particular subject are slanderous, there must be a colloquium or averment, setting forth that subject, and an apt reference to it, showing that the words spoken *were of and concerning it.* Examples are too numerous in the books of pleading to make it necessary to quote any of them here."

In *Beswick* v. *Chappel*, 8 B. Mon. 486, a count in slander alleged these words to have been spoken by the defendant: "You removed the corner tree," and added, "the defendant thereby referring to and speaking of a corner between the survey of said plaintiff and the survey of said Chappel," etc. By statute, the wilful and fraudulent removal of any corner tree to any survey in the commonwealth was made a penitentiary offence. It was said by the court that words falsely charging this offence were undoubtedly actionable. "But

the words, ' you removed the corner tree,' do not of them-
selves import this charge unless used in reference to the cor-
ner tree of a survey, etc., and that they were so used must be
shown by a distinct averment that the defendant was speak-
ing of some particular survey, and of a corner thereof; which
averment is called the colloquium. There is no such aver-
ment in this count. The words, ' the defendant thereby, re-
ferring to and speaking of a survey,' etc., amount to nothing
more than an innuendo, expressing the meaning of the words
which the defendant is alleged to have spoken. And as the
words themselves do not, without the aid of extraneous mat-
ter, import this meaning, that extraneous matter should have
been averred; and then the words; if stated to have been
spoken of and concerning it, might have borne the meaning
which the plaintiff desires to give to them. But instead of
making this statement of the extraneous matter, and of the
colloquium, the declaration attempts to deduce both from
the words themselves, and thus to extend their meaning,
which is inadmissible."

In *Harrison* v. *Manship*, 120 Ind. 43, it is said : " Where
words are used, not actionable within themselves, there
should be some prefatory allegation of some extrinsic mat-
ter, or an explanation of the particular and criminal mean-
ing of the words. This introductory matter having been
stated, the colloquium should connect with it the speaking
of the words complained of, leaving to the innuendo its
proper office of giving those words that construction which
they bore in reference to the extrinsic fact, or explanation of
their particular meaning."

In *O'Brien* v. *Clement*, 4 Dowling & L. 563, it was held
that if the case be one where prefatory matter is necessary to
explain the meaning of the words spoken, such as " black
leg " and " black sheep," and thereby to show them to be
slanderous, and such necessary prefatory matter is stated,
and then it is stated that the defendant published the words,
so explained and shown to be slanderous, of the plaintiff, it

need not be alleged that the words were spoken of and concerning the prefatory matter.

We think ourselves compelled to hold the fifth paragraph of the complaint insufficient on demurrer.

The words set out in the first paragraph indicate that the barn spoken of was the barn of another person than the appellee, and if the offence of arson could be committed by the burning of the barn of another person without regard to its value, perhaps the words charged in the first paragraph would be actionable words. But it is not alleged in the first paragraph that these words were spoken of and concerning the barn whose value is stated, or of and concerning the burning thereof. Under the strict principles of pleading in actions for slander which still obtain in this State, it must be said that the first paragraph is also defective.

We will not extend this opinion by noticing alleged errors on the trial which may not occur again.

Judgment reversed, with instructions to proceed in accordance with this opinion.

Filed April 16, 1891.