## DUST SPRAYER MANUFACTURING COMPANY, Appellant, v. THE WESTERN FRUIT GROWER, Respondent.

### Kansas City Court of Appeals, June 24, 1907.

1. **LIBEL: Petition: Demurrer: Extrinsic Facts.** In an action for libel on demurrer to the petition where the language of the alleged libel is doubtful, the court will ascertain if there is anything in the language which by reasonable intendment is actionable, and in determining the meaning of the words will consider extrinsic facts and circumstances with which they are connected.

2. ———: ———: ———: ———. An alleged libelous article is considered and held to contain nothing defamatory of plaintiff's character or to charge that it willingly and knowingly manufactured a product unfit for the purposes for which it was intended or to impute no moral turpitude.

3. ———: ———: ———: Articles of Commerce: Special Damages. A publication misrepresenting the quality of a single article which the plaintiff has for sale will not sustain an action for libel unless special damages are alleged and proved. [Cases distinguished.]

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

AFFIRMED.

*Aleshire, Herrick & Gundlach*, for appellant, filed argument.

*Vinton Pike* for respondent.

(1) There is no allegation of special damage, without which no action lies, if the publication is not libelous per se. Herman v. Bradstreet, 19 Mo. App. 221; Salvetelli v. Ghio, 9 Mo. App. 158; Walker v. Best, 95 N. Y. Supp. 153; Foot v. Brown, 8 Johns, 63; Walker v. Tribune Co., 29 Fed. 829; Pollard v. Lyon, 91 U. S. 237. (2) In this case the question of libel or no is one for the court, and can be raised upon demurrer. The power

vested in juries in libel cases by our law is for a defendant's protection, not to aid a plaintiff. Ukman v. Daily Record, 189 Mo. 390; Sands v. Marquardt, 113 Mo. App. 496. (3) The innuendo cannot be sustained. It alters and extends the language of the article published. Salvetelli v. Ghio, 9 Mo. App. 157; Christal v. Craig, 80 Mo. 367, 373. (4) The innuendo has no function when the published words are "unambiguous and will not reasonably admit of a libelous construction." Ukman case, 189 Mo. 394; Newell on S. & L., 619 et seq.

BROADDUS, P. J.—This appeal is from the action of the court sustaining a demurrer to plaintiff's petition. The petition is as follows:

"Plaintiff states for its cause of action that it is a corporation duly organized, and now is and has been for the past five years, engaged in the business of manufacturing Dust Spraying Machines and also dust powders in Kansas City, Missouri, used for the purpose of spraying fruit trees, forest trees and shrubbery.

"That the defendant is a corporation, and now is and was at the dates hereinafter mentioned, engaged in printing and publishing the Fruit Grower at St. Joseph, Missouri, being a publication published in the interest of fruit growers of the United States and foreign countries. That said defendant has no place of business or office in Jackson County, Missouri. That plaintiff's cause of action accrued in Jackson County, Missouri. That said Fruit Grower is published monthly and has a large circulation in Jackson county, in the State of Missouri, as well as through the entire State of Missouri, and many other states of the Union and in foreign countries, and that the December number of said Western Fruit Grower was largely circulated in the county of Jackson in the State of Missouri. That there was printed and published in the December issue, 1905, and being volume 16,

No. 12 of said Fruit Grower, the following defamatory and libelous article of and concerning the plaintiff, to-wit:

### "*Using the Dust Sprayer in Winter.*

" 'Can any one tell me whether using the dust spray in winter time, say in January or February, while the trees are dormant, will control the leaf curl of peach trees? Heretofore we have controlled this fungus by using liquid Bordeaux while the trees are dormant, but some of our orchard lands are so rough and hilly that we can not get over them with liquid outfits. Hence we want to know about the effectiveness of the dust formula at this season, and the proper formula to use. Our Georgia Experiment Station has not tried this method.

" 'I wish to state for the benefit of others that I used the dust prayer to prevent brown rot of peaches, and came near ruining my peach trees. The injury to the trees is very great. They were not nearly defoliated, but nearly all of the small bearing limbs were killed. I used the general formula, as recommended by the Dust Sprayer Mfg. Co., Kansas City, Missouri. Luckily I used it on only about two thousand trees. The general formula consists of twenty-five pounds of sulphur, five pounds of paris green and five pounds of 'Sal Bordeaux' to two hundred pounds of dry-slacked lime. I consulted with the manufacturers and used their machine, and they assured me this dust would not injure the tenderest foliage, but my experience was disastrous. I want to know the experience of some one who has used the dust to control leaf curl. How about dust spraying when trees are dormant?—W. T. C., Rome., Georgia."

"That the dust so used by the writer of said article, was the formula therein described, and that said dust so used on said two thousand peach trees and referred to in said article, was manufactured by plaintiff in Kansas City, Missouri; and was sold by plaintiff to the

writer of this article, and that said dust was properly manufactured and did not injure, damage or kill the peach trees therein described. That the only dust manufactured by plaintiff, and used in spraying peach trees, is of the same character as was used by the writer of said article and so purchased from plaintiff. That the writer of said article had before said publication, used the dry dust referred to, upon his own orchard successfully, and defendant well knew such fact.

"That by said publication defendant meant and intended to charge and also by the readers of said article understood to mean and charge that this plaintiff, the Dust Sprayer Manufacturing Company, was engaged in the business of manufacturing and selling a dust powder that was unfit for use in the spraying of fruit trees, and especially in the spraying of peach trees, and that by the use of said powder, a large orchard of peach trees had been killed.

"Plaintiff further states that it is not true that the dust powder manufactured by it and used by the writer of said article, will in any manner injure peach trees and that defendant well knew that said powder had been successfully used in nearly every State in the Union as well as in many foreign countries.

"Plaintiff states that said publication herein complained of, in all of its meanings and innuendoes and in its context and purpose was willingly, wantonly and maliciously made by defendant, of and concerning the plaintiff, Dust Sprayer Manufacturing Company. That the same was and is false, and was known by the defendant at the time of the publication thereof to be false. That the same was and is designed to deprive plaintiff of the public confidence of the fruit growers of the United States and foreign countries and thereby injure the plaintiff in the business as a manufacturer and seller of said dust powder. That plaintiff has sold the same kind of powder used by the writer of said

article in forty-two of the States and Territories of the United States and has exported the same to Canada, British Columbia, New Zealand, West Australia and Victoria.

"That by reason of said publication, plaintiff has been damaged in the sum of twenty-two hundred and fifty dollars, actual damages and that by reason of said willful, wanton and malicious acts and as an example to other wrong-doers and as a punishment to defendant, it should be required to pay plaintiff punitive damages in the sum of twenty-two hundred and fifty dollars.

"Wherefore, plaintiff asks judgment in the sum of forty-five hundred dollars together with its costs of suit."

The question raised by the demurrer is that the alleged publication does not constitute a libel *per se,* and, as no special damages are alleged, the action cannot be maintained.

The publication does not in terms refer to the plaintiff as engaged in the manufacture and sale of the Dust Spraying Powder. But the petition alleges as a fact that it was and the colloqium is that the writing was defamatory and libelous of the plaintiff. In cases like this, where the language is doubtful, the court on demurrer will ascertain if there is anything in the language which by reasonable intendment is actionable. [McGinnis v. Knapp & Co., 109 Mo. l. c. 139.] "In determining the force and effect of the alleged libelous words, though the meaning of the words used cannot be extended by innuendo beyond the natural import of the words charged to be defamatory, yet in determining the meaning of the words of which complaint is made, it is entirely legitimate to consider the meaning to be imputed to them while at the same time considering extrinsic facts and circumstances with which such words are connected." [*Ibid.*] Applying this rule of construc-

tion, taking into consideration the extrinsic fact that plaintiff was engaged in the manufacture and sale of a dust powder containing the same ingredients mentioned in the publication, we may conclude that the natural import of the words had reference to such product of the plaintiff's business.

This much conceded, it remains to be seen whether the words themselves contain defamatory matter constituting libel. There is nothing in the publication of a defamatory character in reference to the plaintiff; nothing to the effect that they are willingly and knowingly manufacturing a product that is unfit for the purpose it is recommended. No moral turpitude is imputed to plaintiff in the language used. All that can reasonably be inferred is that the compound proved to be disastrous as prepared and applied by the writer of the article. He does not say that it is not what it purported to be, but only that it proved so when he used it. And it appears that he was not satisfied with his own experiment but calls for information from others who may have tested it.

The plaintiff's product is an article of commerce manufactured for the express purpose of curing certain diseases prevalent among fruit and forest trees. The words only relate to the quality of the article which plaintiff manufacturers and in which it deals. In Tobias v. Harland, 4 Wend. 537, it was said by Marcy, Judge: "No instance can be found, I believe, where an action has been sustained on words for misrepresenting the quality of any single article which a person has for sale, unless special damages are alleged and proved." In Victor Safe and Lock Co. v. Deright, 147 Fed. 211, it is held: "By the law of libel defamatory language is actionable without special damages when it contains an imputation upon one as an individual, or in respect to his office, profession, or trade, but is not actionable when it is merely

in disparagement of one's property, or of the quality of the articles which he manufactures, or sells, unless it occasions special damages." And such is the law as held by the Supreme Court of Massachusetts in Dooling v. Budget Co., 144 Mass. 258. "Where writings are not libelous in themselves, there can be no recovery at all unless pecuniary injury has been sustained by reason of the publication. [Walker v. Best, 95 N. Y. Supp. 153.] The distinction is clear. Had the article contained a charge imputing wrong-doing such as to affect its standing in the commercial world, the publication would have constituted a libel *per se*. But no such construction can be reasonably drawn from the publication. At most, it only amounted to a criticism of the product of its manufacture.

The plaintiff, to sustain its petition, relies on McGinnis v. Knapp & Co., supra; Academy v. Gaiser, 125 Mo. 517. In the former case the plaintiff was charged with corrupt practice as a member of the Legislature and as a lawyer. In the latter the Academy was charged with fostering dancing, conduct alleged to be antagonistic to the teachings of the Christian Churches. The court held that it was a question for the jury to say wether dancing was immoral. In Minter v. Bradstreet Co., 174 Mo. 447, the publication stated that plaintiffs were behind and could not meet current indebtedness. In Midland Publishing Co. v. Trade Journal Co., 108 Mo. App. 223, it was held that the publication was equivalent to a charge that plaintiff had been guilty of deceit and dishonorable trickery in the conduct of its business. In all these cases the attack was upon the individual or a particular firm or corporation. And in all except one moral turpitude is charged, and in the exception the plaintiff, a trading concern, is charged with inability to meet its indebtedness. These cases belong to a clearly distinctive class from that under consideration. The cause is affirmed. All concur.