## KEE et al. v. ARMSTRONG, BYRD & CO.

No. 4729.—Opinion Filed June 17, 1919.

(Syllabus by the Court.)

**1. Libel and Slander—Classification of Libelous Words.**

Words charged to be libelous may be divided into three classes: First, those that cannot possibly bear a defamatory meaning; second, those that are reasonably susceptible of a defamatory meaning, as well as an innocent one; third, those that are clearly defamatory on their face.

**2. Same—Construction of Words.**

Words used in an alleged slanderous communication or article are to be construed by their most natural and obvious meaning, and in the sense that would be understood by those to whom it was addressed.

**3. Same—Words Libelous Per Se.**

In order that words shall be libelous per se as disparaging a person in his trade or business, they must have been spoken of plaintiff in relation thereto, and be of such a character as would prejudice him by impeaching either his skill or knowledge, or attacking his conduct in such business.

**4. Same.**

Words charging one with being engaged in a perfectly lawful transaction, or merely doing that which he has a legal right to do, are not actionable per se.

**5. Same—Words Not Actionable Per Se—Allegations—Innuendo.**

If the alleged defamatory words are not actionable on their face, but derive their de-

famatory import from extrinsic facts and circumstances, such extrinsic facts and circumstances must be set forth and connected with the words charged by a proper averment. Words not actionable per se may be made to appear actionable by averring such extrinsic facts as will show that they were intended to be slanderous and were so understood. These averments must be distinctly stated in the inducement, and applied to the plaintiff by a proper colloquium, with the intended and understood meaning correctly set out in the innuendoes.

**6. Same—Pleading—"Inducement."**

An "inducement" is a statement of facts out of which the charge arises, or which is necessary or useful to make the charge intelligible, or, in other words, it is intended to state facts whereby the libel or slander is rendered intelligible, and is shown to contain an injurious imputation.

**7. Same—"Colloquium."**

A "colloquium" only serves to show that the words were spoken in reference to the matter of the averment.

**8. Same—"Innuendo."**

An "innuendo" is only explanatory of the subject-matter sufficiently expressed before, and is and can be only explanatory thereof, and cannot extend the sense of the words beyond their own meaning unless something is put upon the record for it to explain, nor can it make a thing certain which is in fact uncertain, nor enlarge or restrict the meaning of words, nor introduce new matter.

**9. Same—Innuendo—Question for Court.**

It is the duty of the court to determine whether the language used in the publication can fairly or reasonably be construed to have the meaning imputed to it in the petition.

**10. Pleading—Demurrer to Petition—Effect —Libel.**

The demurrer to the petition for libel only admits the truth of the facts pleaded, and does not determine the truth of the inference of the pleader based on facts pleaded unless the facts are sufficient to authorize such inference.

**11. Libel and Slander—Publication—Construction in Pleading.**

The publication in the instant case is not susceptible of the construction placed upon it by the plaintiff in its petition, and, in determining whether the petition states a cause of acton, the improper construction placed upon the same by the plaintiff must be disregarded.

**12. Libel and Slander—Words Actionable Per Se.**

The publication is not libelous per sc.

**13. Same—Sufficiency of Petition.**

The petition fails to connect the publication with any extrinsic facts and circumstances which would make the same libelous; therefore it does not state a cause of action.

KANE, J., dissenting.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by Armstrong, Byrd & Co., a corporation, against O. B. Kee and another. Judgment for plaintiff, and defendants bring error. On rehearing, reversed and remanded, with directions to sustain the demurrer to the petition.

Former opinions published in 151 Pac. 572, and 175 Pac. 836, withdrawn.

John H. Burford, John H. Miley, Roy Hoffman, Frank Burford, and Warren K. Snyder, for plaintiffs in error.

Harris, Howard & Nowlin, for defendant in error.

McNEILL, J. This controversy arose over the publication of an article appearing in the Daily Oklahoman November 22, 1908. The publication complained of is as follows:

"I have a $100.00 bond from Armstrong-Byrd Music Co., that I will give to any one than can use it. I bought a piano there and when I showed my bond they refused to accept it without I would add $50.00 to the price I paid for it. Mrs. O. B. Kee."

Upon the trial of the case in the district court, plaintiff, Armstrong, Byrd & Co., recovered a judgment against O. B. Kee and Rose Kee. The case was appealed here, and on July 13, 1915, an opinion was rendered by Commissioner Brett, and the same is reported in 151 Pac. 572. Thereafter numerous petitions for rehearing were filed, and the case was transferred to the Supreme Court proper, and on the 19th day of November, 1917, the Supreme Court adopted the opinion of Commissioner Brett, and the same is reported in 175 Pac. 836. A petition for rehearing was again filed and granted, and the case is again before this court for final determination.

The plaintiff's petition was very lengthy, and the substance of the same is that Armstrong, Byrd & Co., a corporation, was engaged in the music business, and enjoyed a large trade; that its reputation was of very great pecuniary value; that the article above referred to was published in the Oklahoman on the 22d day of November, 1908. They then pleaded the meaning of the article published and alleging that the same was libelous and untrue. A more complete reference to the petition will be referred to hereafter in this opinion.

The defendants filed a motion to make the

petition more definite and certain, which was overruled by the court, and to which the defendant excepted. Thereafter the defendants filed a demurrer attacking the petition on the grounds that the same did not state facts sufficient to constitute a cause of action. This was overruled by the court, to which ruling the defendants excepted. Defendants then answered, first, by way of general denial; second, denying that any conspiracy existed between O. B. Kee and Rose Kee; third, denied that they had published, or caused to be published, the article set forth in plaintiff's petition, or that they had anything whatever to do with the publication of the same; fourth, they further state that the supposed libelous publications as set forth in the article were each and all of them true in substance and in fact, and then state the facts of a transaction occurring between the parties attempting to justify or show the statements contained in the article were true. Upon the trial of the case, the court instructed the jury that the article was libelous, and, if the defendants had published the same, they would be liable for damages, unless the facts therein stated were true. The jury returned a verdict for plaintiff, and defendant appealed.

The parties will be referred to hereafter as Armstrong, Byrd & Co., plaintiff, and O. B. Kee and Rose Kee as defendants, the position they occupied in the court below.

For reversal, the defendants assign 16 separate and distinct assignments of error. The first assignment of error is that the court erred in overruling the demurrer interposed by these defendants and each of them to the petition.

It will be necessary to direct our attention, first, to the petition to ascertain whether the petition stated a cause of action. The subject of libel and slander is an important one, and occupies a large space in the reported decisions of the courts of the different states.

In considering cases of this kind and character, the different courts have referred to articles as being "libelous," and those that are "libelous per se." No writer has attempted to lay down any strict rule of law, which may be followed by the courts in distinguishing between publications that are "libelous" and those termed "libelous per se." We have been unable to find any writer who has defined the term "libelous per se," but our court has often referred to publications as being "libelous" and those "libelous per se."

It has been well said that words charged to be libelous fall into one of three classes:

"First, those that cannot possibly bear a defamatory meaning; second, those that are reasonably susceptible of a defamatory meaning, as well as an innocent one; third, those that are clearly defamatory on their face." Pratt v. Pioneer Press Co., 30 Minn. 41, 14 N. W. 62.

If a particular publication comes within the first of these classes, the same will not support an action for libel, although such a publication might support an action for a malicious wrong or malicious injury, or an action as designated by common law, an action on the case, but the same cannot be the foundation for an action for libel or slander. The foundation for an action of libel must be that the words are defamatory or bear a defamatory meaning.

The second class are those words that are reasonably susceptible of a defamatory meaning, as well as an innocent one, and may be made defamatory by reason of their ambiguity, or by pleading certain extrinsic facts connecting said facts with the publication and by pleading that the article was meant and understood by the general public to have such a meaning and that the general public so construed the publication.

The third class has been referred to by numerous text-writers, and in the different decisions, as words or publications that are libelous per se, and this court in numerous decisions has adopted the rule, and termed said publication as libelous per se.

In determining what classification a publication is within, our courts have adopted the followng rule in construing the meaning of publications, to wit:

"Words used in an alleged slanderous communication or article are to be construed by their most natural and obvious meaning, and in the sense that would be understood by those to whom it was addressed." Bodine v. Times-Journal Pub. Co., 26 Okla. 135, 110 Pac. 1096, 31 L. R. A. (N. S.) 147; Spencer v. Minnick, 41 Okla. 613, 139 Pac. 130; Kelly v. Roetzel, 64 Oklahoma, 165 Pac. 1150.

The statute in force and effect at the time of the publication was Wilson's Rev. & Ann. Statutes of 1903. Section 2237 defines "libel" as follows:

"* * * Libel is a false or malicious unprivileged publication * * * or which tends to deprive him of public confidence, or to injure him in his occupation."

In determining whether the publication is libelous or not, the plaintiff, operating a store, will come within that class of cases that refer to merchants, and whether such a publication when referring to a merchant is libelous.

"No general rule can be laid down defining absolutely and once and for all what words are defamatory and what are not. Words which would seriously injure A.'s reputation might do no harm to B. Each case must be decided mainly on its own facts." Odgers on Libel and Slander, p. 2.

The general rule applied to an alleged libelous publication, when referring to a person engaged in business of a merchant, in determining whether the publication is libelous per se, is, if the publication imputes to the merchant any fraud, dishonesty, misconduct, or insolvency or incapacity in the management of said business, or any connection therewith, then said publication is termed libelous per se.

The publication in the case at bar, if libelous, is to be determined so under the subdivision of the statute which provides:

"Or which tends to deprive him of public confidence, and to injure him in his occupation."

This court in the case of N. S. Sherman Machine Co. v. Dun, 28 Okla. 447, 114 Pac. 617, stated:

"The question essential for determination is whether said publication is libelous per se. The alleged libel does not impute to the plaintiff any fraud, dishonesty, misconduct, or incapacity in the management of said business, or in connection therewith, or in any other relation of life."

Odgers on Libel and Slander, p. 32, stated as follows:

"Any printed or written words are libelous which impeach the credit of any merchant or trader by imputing to him bankruptcy, insolvency, or even embarrassment, either past, present, or future, or which impute to him fraud or dishonesty or any mean or dishonourable conduct in his business, or which impugn his skill, or otherwise injure him in his trade or employment."

In referring to injuring a person in his trade or business, the Supreme Court of New York, in the case of Armstrong v. Sun Printing & Publishing Ass'n., 137 App. Div. 828, 122 N. Y. Supp. 531, states as follows:

"In order that words shall be libelous per se as disparaging a person in his trade or business, they must have been spoken of plaintiff in relation thereto, and be of such a character as would prejudice him by impeaching either his skill or knowledge, or attacking his conduct in such business."

Cyc., in treating this subject and dealing with merchants, tradesmen, and manufacturers (25 Cyc. 337), lays down the following rule:

"Every willful and unauthorized imputation, spoken, written, or printed, which imputes to a merchant, manufacturer, or other business man, conduct which is injurious to his character and standing as a merchant, manufacturer, or business man, is libelous or slanderous as the case may be. * * * Words charging one with being engaged in a perfectly lawful transaction or merely doing that which he has a legal right to do are not actionable per se."

25 Cyc., on page 253, lays down the rule as to what articles are libelous per se, and states as follows:

"Words in disparagement of goods, relating to the quality of articles made, produced, or sold, but containing no imputations in themselves affecting personal character or reputation, are not held to be libelous per se."

The Supreme Court of New York, in the case of Hehmeyer v. Harper's Weekly Corporation, 170 App. Div. 459, on page 461, 156 N. Y. Supp. 98, on page 100, in viewing the authorities, stated as follows:

"It has long been the settled law of this state that an attack, not on a manufacturer or trader, but upon the quality of an article he makes or vends, must, to be actionable per se, import that he is guilty of deceit or malpractice in making or vending the article, and otherwise there is no cause of action unless special damages are alleged. Tobias v. Harland, 4 Wend. 537; Kennedy v. Press Publishing Co., 41 Hun, 422; Le Massena v. Storm, 62 App. Div. 150, 70 N. Y. Supp. 882; Marlin Fire Arms Co. v. Shields, 171 N. Y. 384, 64 N. E. 163, 59 L. R. A. 310, and cases cited; Philipp Co. v. N. Y. S. Z. [165 App. Div. 377, 150 N. Y. Supp. 1044] supra. See, also, Dooling v. Budget Pub. Co., 114 Mass. 258, 10 N. E. 809, 59 Am. Rep. 83; Victor Safe & Lock Co. v. Deright, 147 Fed. 211, 77 C. C. A. 437, 8 Ann. Cas. 809; Hopkins Chem. Co. v. Read Drug & Chemical Co., 124 Md. 210, 92 Atl. 478; Bosi v. N. Y. Herald Co., 33 Misc. Rep. 622, 68 N. Y. Supp. 898, affirmed 58 App. Div. 619, 68 N. Y. Supp. 1134."

Again, the Supreme Court of New York, in the case of Willis v. Eclipse Mfg. Co., 81 App. Div. 591, 81 N. Y. Supp. 359, stated as follows:

"A letter charging a merchant with 'cutting' prices on a certain bicycle brake, but which does not charge that plaintiff was bound by any contract not to cut prices, or that he was connected with any contract to maintain them was not libelous per se."

The Supreme Court of Errors of Connecticut, in the case of Donaghue v. Gaffey, 54 Conn. 257, 7 Atl. 552, states as follows:

"Where defendant, a retail seller of liquor, issues a circular to other retail sellers of his town, charging that plaintiffs, wholesale sellers of liquor, being vexed by his having ceased to buy from them, overbid him in the matter of a release, and turned him out of his

place of business, plaintiffs, in the absence of special damages, have no cause of action."

Ruling Case Law, vol. 17, p. 296, states as follows:

"Not every conceivable charge which may possibly lessen a man's business will warrant a recovery of damages for the publication thereof. * * * Also, on the ground that it is not a libel to charge a person with having done that which he may legally and properly do, it has been held not libelous to publish a copy of a public record of conditional sales made by a retail merchant, although the publication subjects the seller to the hatred of his customers and injures him in his business. There are a few other limitations on the right to recover damages for imputations affecting one's profession or business, which must be noted. Thus, the publication of an article stating that a dinner furnished by a caterer on a public occasion was 'wretched,' and was served 'in such a way that even hungry barbarians might justly object,' and that 'the cigars were simply vile, and the wines not much better,' has been held not actionable per se, on the ground that such a charge relates to but one occasion and is therefore not a libel on the plaintiff in the way of his business, and that therefore in such a case no recovery will be allowed without proof of special damages."

We will then see if, under the reasoning adopted in the above-entitled cases, this publication can be said to be libelous per se, by giving to the words used in the publication their most natural and obvious meaning, and by giving to them that meaning which would most naturally be ascribed thereto by those who would read the publication. The natural and ordinary construction that would be placed upon the article would be the bond the defendant had would only be accepted by the plaintiff as having a value of $50. The publication does not state whose bond this is, nor does it state that the Armstrong, Byrd & Co. had signed the bond or had guaranteed the payment of the same. The publication does not say, nor does it purport to say, that the Armstrong, Byrd & Co. ever agreed to accept the bond. The publication only states that Armstrong, Byrd & Co. refused to accept this bond of the defendant when shown to them for the sum of $100.

It does not impute dishonesty, nor does it accuse the plaintiff of any misconduct in its business. It does not accuse the plaintiff of bad faith or breach of contract. As was said in 25 Cyc. 337, above:

"Words charging one with being engaged in a perfectly lawful transaction or merely doing that which he has a legal right to do are not actionable per se."

There is no imputation in this publication that the Armstrong, Byrd & Co. did any more than what they had a right to do.

We therefore agree with the former opinion of this court that the article in and of itself does not come within the class of publications that are clearly defamatory on their face, and are actionable per se, and that the said publication is not susceptible of such a construction. We must therefore hold that the same is not what is termed as "libelous per se."

If the publication is libelous, it must come within that class of cases as being reasonably susceptible of a defamatory as well as an innocent meaning, and those publications that are termed and designated as not libelous per se. In order for the petition to state a cause of action, it is necessary for the plaintiff to plead by way of inducement or averment, colloquium and innuendo, certain extrinsic facts which connect the plaintiff with the libelous publication and to plead the meaning the words have and that they would be understood to have in connection with the libelous article as published.

The rule is laid down in 13 Cyclopedia Pleading and Practice, p. 32, as follows:

"If the alleged defamatory words are not actionable on their face, but derive their defamatory import from extrinsic facts and circumstances, such extrinsic facts and circumstances must be set forth and connected with the words charged by a proper averment. Words not actionable per se may be made to appear actionable by averring such extrinsic facts as will show that they were intended to be slanderous and were so understood. These averments must be distinctly stated in the inducement, and applied to the plaintiff by a proper colloquium, with the intended and understood meaning correctly set out in the innuendoes."

The following cases support the above rule: Hays v. Mitchell, 7 Blackf. (Ind.) 117; Moerlender v. Porter, 144 App. Div. 180, 99 N. Y. Supp. 533; Emig v. Daum, 1 Ind. App. 146, 27 N. E. 322; Carter v. Andrews, 16 Pick. (33 Mass.) 1; Quinn v. Prudential Ins. Co., 116 Iowa, 522, 90 N. W. 349.

The distinction between the inducement or averment of the petition, the colloquium, and the innuendo is well defined by text-writers, Words and Phrases, and Cyc. But by reading the numerous decisions we often find no distinction made, but all are apparently grouped together and referred to as being innuendoes. The distinction between them, or the office they supply in the petition, is technical, and under our pleading, which requires that you plead the facts, it perhaps is not necessary to distinguish

whether the portion of the pleading is properly referred to as the averment, inducement, colloquium, or innuendo; but if the facts are properly pleaded, and all the necessary allegations are contained in the petition, this would be sufficient no difference how they are designated.

The Supreme Court of Alabama, in the case of Penry v. Dozier, 161 Ala. 292, 49 South. 909, speaking through Justice Mayfield in distinguishing such phrases and explaining the office and purpose of each of them, states as follows:

"An 'inducement' is a statement of facts out of which the charge arises, or which is necessary or useful to make the charge intelligible. In other words, it is intended to state facts by reference to which the libel or slander is rendered intelligible and is shown to contain an injurious imputation.

"A 'colloquium' only serves to show that the words were spoken in reference to the matter of the averment.

"An 'innuendo' is only explanatory of the subject-matter sufficiently expressed before, and is and can be explanatory only of such matter. It cannot extend the sense of the words beyond their own meaning unless something is put upon the record for it to explain. Van Vechten v. Hopkins, 5 Johns. (N. Y.) 220. 4 Am. Dec. 339. An innuendo cannot make a thing certain which is, in fact, uncertain. An innuendo cannot enlarge or restrict the natural meaning of words, nor can it introduce new matter. An innuendo cannot be proved, and it is for the court to decide whether given words or given publications are capable of the meaning ascribed to them by the innuendo, and for the jury to decide whether such meaning is truly ascribed to them. Gaither v. Advertiser Co., 102 Ala. 458, 14 South. 788; Wofford v. Meaks, 129 Ala. 349, 30 South. 625, 55 L. R. A. 214, 87 Am. St. Rep. 66; Henderson v. Hale, 19 Ala. 154; 25 Cyc. p. 449. Where words claimed to be defamatory are capable of conveying an innocent meaning, then there must be an averment and an innuendo showing, not only that the words were intended by plaintiff in a defamatory sense, but that the hearers may have understood the language as conveying the alleged defamatory meaning. Smith v. Gafford, 33 Ala. 168. But if the words are unequivocally actionable per se—that is charging a crime—then an innuendo will be treated as a mere surplusage. 25 Cyc. p. 452."

For further discussion of inducement and colloquium, see 25 Cyc. 436; 17 R. C. L. 393-395.

"An innuendo is used to explain the meaning of words employed by the defendant, but not to change or enlarge their natural meaning, and whether a publication is libelous per se or the language thereof will bear the interpretation or convey the meaning ascribed

to it in the innuendo are questions of law for the court." State v. Huff, 96 Kan. 632, 152 Pac. 642.

"A complaint, alleging the speaking of words not slanderous per se, must show by the innuendo, not only that the words were slanderously uttered, but were understood in the same slanderous sense by those in whose hearing they were spoken." Floyd v. Fordyce, 53 Ind. App. 449, 101 N. E. 825.

"Where, in an action for libel, the situation is not controlled by matters of inducement or colloquium pleaded, the question whether the publication is libelous per se is for the court." Sheibley v. Ashton, 130 Iowa, 195, 106 N. W. 618.

It is the duty of the court to determine whether the language used in the publication can fairly or reasonably be construed to have the meaning imputed to it in the petition. Harris v. Santa Fe, 58 Tex. Civ. App. 506, 125 S. W. 77; Penry v. Dozier, 161 Ala. 292, 49 South. 909; Emig v. Daum, 1 Ind. App. 146, 27 N. E. 322; Rodebaugh v. Hollingsworth, 6 Ind. 339; State v. Huff, 96 Kan. 632, 152 Pac. 642; Sheibley, v. Ashton, 130 Iowa, 195, 106 N. W. 618.

It is also held that a demurrer to the petition for libel and slander only admits the truth of the facts pleaded and does not determine the truth of the inference of the pleader based on the facts pleaded unless the facts are sufficient to authorize such inference. Harris v. Santa Fe, 58 Tex. Civ. App. 506, 125 S. W. 77; Wofford v. Meaks, 129 Ala. 349, 30 South. 625, 55 L. R. A. 214, 87 Am. St. Rep. 66; Naulty v. Bulletin Co., 206 Pa. 128, 55 Atl. 862.

The petition in the case at bar does not set out a copy of the bond purported to be referred to in the publication, nor does it set out any transaction between the plaintiff and the defendants where a bond was involved, nor does it set out any transaction or attempt to set out any transaction where the purchase of a piano was involved, between the plaintiff and the defendants, or where a bond was offered as payment. The first four paragraphs of the petition contain just a general statement of who the plaintiff is, the character and reputation it has, the kind of business it is engaged in, the extent of its business, that its good name and standing is of great pecuniary value, and a copy of the publication, the fact that the same was published in the Daily Oklahoman, a newspaper of large circulation. If the petition does state a cause of action by pleading the extrinsic facts, it must be determined from the fifth paragraph of the petition, which paragraph is as follows:

"(5) The plaintiff alleges that about November 1, 1908, it had delivered to certain cus-

tomers and prospective customers, piano bonds for different sums of money, and that said bonds were good for the amounts named, as part payment upon the purchase of pianos, from the plaintiff.

"That by the said printed article, the defendant intended to allege and did allege that the bond of the plaintiff which the plaintiff had issued as good for a part payment upon pianos which the plaintiff had for sale, was of no value whatever.

"The plaintiff avers that in the said libelous newspaper article, the printed words, 'Mrs. O. B. Kee,' were intended by the defendants to mean and did mean the defendant Rose Kee, the wife of the defendant O. B. Kee. That in the said article by the printed words, 'Armstrong & Byrd Music Company,' the defendants intended to mean and did mean the plaintiff 'Armstrong, Byrd & Co.'

"That by the said printed articles, the defendants by innuendo intended to allege, publish, and circulate against the plaintiff and did thereby allege, publish, and circulate against the plaintiff, willfully, falsely, and maliciously, the libelous averment that this plaintiff, Armstrong, Byrd & Co., made a contract with the defendant Mrs. O. B. Kee. alias Rose Kee, for the sale of a certain piano, and when the said Mrs. O. B. Kee showed to the plaintiff a certain piano bond, the plaintiff refused to accept said bond, unless the defendant Mrs. O. B. Kee would pay to the plaintiff fifty ($50.00) dollars more than the agreed purchase price of said piano.

"That by the said printed article these defendants intended to allege and did allege the libelous averment that this plaintiff had broken its contract with the defendant Mrs. O. B. Kee, alias Rose Kee, and refused to comply with its contract and to carry out its contract with the defendant Mrs. O. B. Kee. alias Rose Kee, and had wholly repudiated the same.

"That by the said printed article the defendant intended to allege and circulate and publish, and did allege, circulate and publish, the libelous averments that the contracts of this plaintiff in business are of no binding force, and that the word of this plaintiff in business is unreliable, and that this plaintiff will repudiate and refuse to comply with any of its business contracts and business obligations, and that the plaintiff as a business concern is unreliable, unworthy of belief, unworthy of credit, and false in its business dealings."

A great many of the states have a statute which makes it unnecessary to plead extrinsic facts and circumstances or the inducement or colloquium, but the courts of those states hold that in an action for libel, based upon a publication which is not libelous per se, it is necessary to plead the extrinsic facts and circumstances in order for the petition to state a cause of action. It will be noticed

that the publication refers simply to one transaction, and does not in any way refer to the manner or method or the way the plaintiff does business. It is necessary to plead, by inducement or averment, such extrinsic facts to make the publication intelligible by reading the petition. In order to do this, some explanation of what a piano bond is, should be given, to enable the court by reading the publication in connection with the allegations of the petition to say what was meant by referring to a piano bond, also that the court might know by whom the bond was signed, if payable, to whom payable, and for what purposes it was issued—under what circumstances the defendant had received it, whether they had paid value for the same or not; how these bonds were disposed of by the persons who issued them. The petition alleges they were delivered by the plaintiff. It should also state whether they were a gift or whether sold. These are essential facts that must be known by the court and pleaded in the petition for the court to determine whether the article can be made libelous. The publication does not state those facts. The only thing the petition states is that the plaintiff had delivered certain piano bonds to certain customers and prospective purchasers and they were good for $100 on the purchase price of the piano. This is the only reference to the piano bond in the petition.

The publication refers to the purchase of a piano by the defendants from the plaintiff, or an attempt to purchase the same. A proper averment that the court might know what this transaction was should be set out in the petition, or, if there was no transaction of any kind or character in reference to the purchase of the piano, then that should be stated.

It is also necessary to set out something about the transaction as to whether a piano bond was offered in payment for a piano; if so, then this should be set out. In this the pleader has failed to set out any of said facts.

These are the proper inducements or averments that must be pleaded in order that one may read them in connection with the publication in order to see if said publication is defamatory.

The colloquium then would be to plead the facts showing that this publication was directed toward this particular transaction or to plaintiff's business in general, then the court could say by construing the publication, in connection with this transaction, whether the language used under such conditions was defamatory, but there is no col-

loquium in the petition. There is no allegation in the petition that the publication refers to any transaction whatever.

The innuendo then would be to show wherein the publication was ambiguous, and by giving the ambiguous words their proper construction or one the general public would give to the same, when used in reference to the transaction set out in the averment, if they then became defamatory.

It will be for us to determine whether the language used in the publication can reasonably be construed to have a meaning imputed to it in paragraph five. This paragraph is divided into five sections. We will take them up and dispose of them separately.

The first section is a proper averment or inducement to be pleaded.

In the second section the plaintiff alleges that the defendant meant and intended to allege that the bond was of no value whatever. This must be considered in a technical sense an innuendo, and the rule placed upon the construction to be given an innuendo is defined in Newell on Slander, sec. 752, as follows:

"The office of an innuendo is to define the defamatory meaning which the plaintiff seeks to put upon the words complained of, to show how they come to have the defamatory meaning claimed for them, and also to show how they relate to the plaintiff, whenever that is not clear upon the face of them. But an innuendo must not introduce new matter, or enlarge the natural meaning of words. It must not put upon them a construction which they will not bear. It cannot alter or extend the sense of the defamatory words, or make that certain which is in fact uncertain. If the words are incapable of the meaning ascribed to them by the innuendo, and are prima facie not actionable, the judge at the trial will sometimes order a nonsuit. But if the words are capable of the meaning ascribed to them, however improbable it may appear that such was the meaning conveyed, it is properly province of the jury to say whether they were in fact so understood.

"The office of the innuendo is to aver the meaning of the language published. Therefore, if the meaning of the language is plain, no innuendo is needed. Their use of it can never change the import of the words, nor add to nor enlarge their sense. 'An innuendo helps nothing unless the words to which it is applied have a violent presumption of the innuendo.' If the common understanding of men takes hold of the published words and at once applies without difficulty or doubt a libelous meaning thereto, an innuendo is not needed and would be but useless surplussage in pleading."

The following cases have held:

"That an innuendo cannot be used to enlarge the meaning of words, nor attribute to them a meaning which they would not bear." Van Vechten v. Hopkins, 5 Johns. (N. Y.) 220, 4 Am. Dec. 339; Penry v. Dozier, 161 Ala. 292, 49 South. 909; Naulty v. Bulletin Co., 206 Pa. 128, 55 Atl. 862; Wisner v. Nichols, 165 Iowa, 15, 143 N. W. 1020; Maerlender v. Porter, 114 App. Div. 180, 99 N. Y. Supp. 533; Quinn v. Prudential Ins. Co., 116 Iowa, 522, 90 N. W. 349; Moore v. Miers, 78 N. J. Law, 201, 73 Atl. 32.

This section in the petition is improperly pleaded, and the publication which states that the $100 bond would only be accepted for $50 cannot support an innuendo or allegation that it is worthless, and has no value. In determining whether the petition states a cause of action, this section of the paragraph and construction placed upon the same must be disregarded.

The third section refers only to the parties and who is meant by reference to the names. This is a proper innuendo.

The fourth section alleges the publication meant that Mrs. Kee had purchased a piano, and, when she showed her bond, the plaintiff refused to accept the same unless she would pay $50 more than the agreed purchase price of the piano. This is a correct pleading and statement by way of innuendo, unless it would be said that the article should be construed, not that they added $50 to the price of the piano, but they required her to pay $50 more than they had paid for the bond; but the result would be the same.

It would still leave the value of the bond at $50.

In the fifth section, plaintiff alleges that the article meant that this plaintiff had broken its contract with Mrs. O. B. Kee, and refused to carry out its contract with her, and had wholly repudiated the same. In a strict technical sense, this is pleaded by innuendo.

It must be remembered that no copy of the purported bond referred to in the publication is pleaded. It must be further remembered that the pleading in no manner refers to any transaction between the plaintiff and the defendant where a' piano bond was involved; nor does the pleader in any way refer to any transaction between the plaintiff and the defendant where a piano was sold or where a bond was offered in payment. Then, without pleading that there had been a contract for the sale of a piano and that the plaintiff had refused to accept the bond, the publication cannot be construed to mean that the plaintiff had broken its contract with the defendant, and had refused to carry out its contract, and had

wholly repudiated the same. There is nothing in the publication that refers to the fact that, at the time Rose Kee bought the piano, the plaintiff agreed to accept a piano bond. There is nothing in the publication, nor the pleadings either, that alleges the plaintiff had delivered a piano bond to Mrs. Kee. This interpretation of this publication cannot be sustained without pleading some extrinsic facts that connect the plaintiff with the fact that they had given Mrs. Kee a bond and then alleging the fact that, when she presented it, they repudiated it. The publication cannot bear such a construction, without pleading some facts to base such a construction upon. These allegations must be treated as surplusage, and cannot add to or take from the petition in determining whether it states a cause of action.

In the sixth section, plaintiff alleges by innuendo that the article means that the contracts of plaintiff's business are of no binding force. That construction cannot be placed upon the publication, because the publication does not refer to any contract which they refused to comply with, nor does it say that plaintiff did anything that it did not have a legal right to do, and the pleading in no way refers to or alleges that there was a contract between the plaintiff and the defendant that was repudiated or over which there was any controversy.

The next portion of the petition alleges that article means the plaintiff is unreliable in business. Certainly that cannot be a proper interpretation to be given to this publication. If that denotes unreliability, then it can be said, if I state that I bought a suit of clothes of a merchant and offered a liberty bond in payment therefor and he refused to accept the same at its face value, that would impute that the merchant is unreliable.

In the next, it is alleged that this article means that the plaintiff will repudiate and refuse to comply with any of its business contracts and obligations. This publication cannot be so construed, unless the plaintiff attempts to connect it with some transaction where it refused to comply with a contract, and this the plaintiff has not alleged, nor has it attempted to connect it in its pleading with any contract existing between these parties or any other parties.

It is next alleged that the article meant that plaintiff as a business concern was unreliable, unworthy of belief, unworthy of credit, and fraudulent in its business dealings. They have attempted to plead this by innuendo. Remembering that the term "innuendo" cannot be used to enlarge the meaning of words, nor attribute a meaning which they will not bear, it can be readily seen that this is placing an imaginary construction on the words used in this publication and giving them a meaning which is improper.

The balance of the petition goes simply to the question of damages. We then have the petition stripped of its improper pleadings by way of innuendoes, and as a matter of law are improper, and no such construction can be placed upon said words, as pleaded, and therefore cannot be taken into consideration by the court. The portion of the petition then which is properly pleaded in order for the court to determine whether this article is libelous will be the first, third, and fourth sections of paragraph five, which portion of the petition then would be as follows:

"(5) The plaintiff alleges that about November 1, 1908, it had delivered to certain customers and prospective customers, piano bonds for different sums of money, and that said bonds were good for the amounts named, as part payment upon the purchase of pianos, from the plaintiff.

"The plaintiff avers that in the said libelous newspaper article, printed words, 'Mrs. O. B. Kee,' were intended by the defendant to mean and did mean the defendant Rose Kee, the wife of the defendant O. B. Kee. That in the said article, by the printed words 'Armstrong & Byrd Music Company,' the defendants intended to mean and did mean the plaintiff 'Armstrong, Byrd & Co.'

"That by the said printed articles, the defendants by innuendo intended to allege, publish, and circulate against the plaintiff and did thereby allege, publish, and circulate against the plaintiff wilfully, falsely and maliciously, the libelous averment that this plaintiff, Armstrong, Byrd & Co., made a contract with the defendant Mrs. O. B. Kee, alias Rose Kee, for the sale of a certain piano, and when the said Mrs. O. B. Kee, showed to the plaintiff a certain piano bond, the plaintiff refused to accept said bond, unless the defendant, Mrs. O. B. Kee, would pay to the plaintiff fifty ($50.00) dollars more than the agreed purchase price of said piano."

We then have a petition attempting to state a cause of action for libel upon a publication which is not libelous per se, and the pleader has not connected this publication with any transaction whatever. The only fact that is pleaded in order to determine whether the publication is libelous or not, that does not appear from reading the publication, is that the plaintiff herein had delivered certain bonds to certain customers and prospective customers that were worth $100 on the purchase of a piano. There is no allegation in the petition as to the meaning the general public would give to this article

as published, or how it would be naturally construed by them. The pleader has pleaded only in general terms. As was said in the case of Penry v. Dozier, supra:

"A mere allegation in the complaint that it was intended to charge a crime or to degrade or bring the plaintiff into contempt or ridicule cannot be sufficient."

A case where the pleading is very similar is the case of Wallace v. Homestead, 117 Iowa, 348, 90 N. W. 835, where the plaintiff attempted to plead a cause of action very similar to the one at bar, and the court held that the publication was not libelous per se and the innuendo pleaded was improper and that the words could have no such meaning.

Another rule, this publication refers only to a particular transaction, and without the proper averments or pleadings, cannot be held to be construed to reflect upon the general way or manner that the plaintiff does business. This theory is supported in the case of Dooling v. Budget Pub. Co., 144 Mass. 258, 10 N. E. 809, 59 Am. Rep. 83.

We must remember that it is not actionable per se when a publication charges one of being engaged in a perfectly lawful transaction, or doing that which he has a legal right to do, and, unless there is some inference that can be drawn from this publication by construing it with extrinsic facts set out in the petition, that the plaintiff was doing that which he had no legal right to do, then the petition does not state a cause of action. This article, not being libelous per se, and the plaintiff not having pleaded extrinsic facts and circumstances connecting this publication with any transaction between the plaintiff and the defendant or any one else, but pleaded in general terms by attributing a meaning which the publication will not support, and which cannot be given the said words, then it cannot be said to be libelous. Then we have the petition practically without any inducement, colloquium, or proper innuendoes, to determine whether the publication is libelous.

The plaintiff in one petition for rehearing sets out a copy of the bond. While in construing the petition, the bond cannot properly be considered, as it is not attached to the petition, yet, inasmuch as the plaintiff has referred to the same in the brief, we will take the liberty to refer to that fact here. The bond is as follows:

"Factory Piano Bond. $100.00. This one bond, if presented at Armstrong, Byrd & Co., Oklahoma City, on or before Nov. 21st, 1908, entitles Mrs. O. B. Kee to a credit of one hundred dollars on any new piano in their stock, this bond to apply as per contract with manufacturer. J. A. Owenhouse, Factory Representative. [Seal.] Record 105."

It can readily be seen that if the bond had been attached to the petition it would change the foundation for the cause of action, and necessitate different allegations in the pleading. This bond not being signed by the Armstrong, Byrd & Co., and the fact that they had only delivered the same, with no allegation or intimation any place that they are selling this bond, how could it affect their business or refer to it in a defamatory manner without such allegation? If this is a libel, it would not be a libel against the corporation, unless the article itself imputes to this corporation dishonesty, fraud, deceit, or other misconduct in its trade or business; but the article itself does not do this. The petition does not allege any facts by which this can be done. If the publication does anything, it only tends to show the value of this piano bond.

As was said by the Supreme Court of New York in the case of Hehmeyer v. Harper's Weekly Corporation, supra:

"An attack, not on a manufacturer or trader, but upon the quality of an article he makes or vends, must, to be actionable per se, import that he is guilty of deceit or malpractice in making or vending the article, and otherwise there is no cause of action unless special damages are alleged." Dust Sprayer Mfg. Co. v. Western Fruit Grower, 126 Mo. App. 139, 103 S. W. 566; Victor Safe & Lock Co. v. Deright, 147 Fed. 211, 77 C. C. A. 437, 8 Am. Cas. 809; Le Massena v. Storm, 62 App. Div. 150, 70 N. Y. Supp. 882.

The most that can be said of this article is that this piano bond, instead of being worth $100, was only worth $50. There is no averment or extrinsic facts alleged in the petition which in any way connect this bond with the plaintiff any more than that it delivered the same. There is no allegation in the petition that refers to any contract between the signer of the bond and the Armstrong, Byrd & Co. The bond on its face does not purport to be good after the 21st of November, 1908. The article published, was published November 22d. Construing the petition as plaintiff has suggested, in the light of the wording of the piano bond, this would make the plaintiff's petition still more vulnerable to attack by demurrer. We have the petition which simply sets forth the publication, and to whom it refers, and the allegation that the plaintiff had delivered it and would accept the bond as of the value of $50, and the bond itself, which shows it was not signed by the plaintiff, and no intimation in the publication that the plaintiff was even obliged to accept the same.

The criticism of the petition is that the pleader has attempted to use general terms and suggestions in a general way, that this publication refers to the general conduct of the plaintiff in its business, without pleading any of the extrinsic facts to show in what way or what manner it could be so construed. It in no way or manner refers to the conduct or the manner in which the plaintiff conducts its business. Having decided that the publication is not libelous per se, then it is not libelous as pleaded by the plaintiff for the reason that it has not pleaded any extrinsic facts by which the publication can be so construed. The publication, construed in the light of the pleadings, does not impute dishonesty or bad faith to the plaintiff, nor can the same be so construed from any extrinsic facts alleged in the petition.

The petition does not allege, nor can the publication be construed to accuse the plaintiff of doing anything it did not have a legal right to do. The petition does not even allege as to how this publication would be construed by the general public. There are no facts alleged in the petition that connect this publication with any transaction by which the court could say this publication is libelous.

We must therefore conclude that the petition does not state a cause of action, and that the court committed error in overruling the demurrer, and the case is therefore reversed and remanded, with directions to the court to sustain the demurrer to the petition.

OWEN, C. J., and SHARP, HARRISON, PITCHFORD, JOHNSON, and HIGGINS, JJ., concur. KANE, J., dissents.